UNITED STATES of America ex rel.
Albert B. CROSBY, Appellant,

v.

Joseph R. BRIERLEY, Superintendent,
Philadelphia, Pennsylvania.

No. 17044.

United States Court of Appeals
Third Circuit.

Argued Sept. 20, 1968.

Decided Dec. 9, 1968.

David H. Kubert, Philadelphia, Pa., for appellant.

James D. Crawford, Asst. Dist. Atty., Philadelphia, Pa. (Welsh S. White, Asst. Dist. Atty., Michael J. Rotko, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This is a habeas corpus proceeding in which relator attacks his plea of guilty to two murder indictments in a state court. He was represented by private counsel when the pleas were entered to two bills of indictment for murder. In response to the court crier's inquiry, "How plead you, guilty or not guilty?", relator answered, "Guilty generally". The question of the validity of that plea is now before us. A three-judge court conducted a hearing on the plea under Pennsylvania law and procedure to determine the degree of guilt; after a seventy-minute hearing, relator was sentenced to life imprisonment. Having exhausted his remedies in the state courts, Commonwealth ex rel. Crosby v. Rundle, 415 Pa. 81, 202 A.2d 299 (1964), cert. den. 379 U.S. 976, 85 S.Ct. 677, 13 L.Ed.2d 567 (1965), he petitioned for a writ of habeas corpus in the District Court be-

low. An evidentiary hearing was held; his petition was denied; and this appeal followed.

We must determine whether the plea [1] was made voluntarily after proper advice and with full understanding of the consequences; without these ingredients, the due process requirements of the Fourteenth Amendment are not met. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed.2d 1009.

Bills of indictment were returned against relator, charging murder and manslaughter of his wife and her male companion. Three separate arraignments were held. He entered a plea of not guilty at the first. When arraigned a second time, he entered consecutive pleas of guilty, not guilty, and guilty; the arraignment judge then refused to accept any plea from the relator at that time. The third arraignment took place on the day of his trial. The record indicates that the court crier asked him one question on each indictment to which he made the "guilty generally" response. It discloses that relator was asked no questions concerning his understanding of the plea or its consequence.[2]

Relator charges that neither his counsel nor the court explained the consequences of his plea of guilty, that he did not understand the nature of it, and that he entered it under the assumption that the trial court would pass on the merits of a defense of excusable homicide. If the plea was not voluntarily and intelligently made, he would be entitled to have it vacated and his sentences withdrawn. A guilty plea, given under circumstances which deprive it of its voluntariness, is void. Machibroda v. United States, 368 U.S. 487, 494, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). As was stated in Kercheval v. United States, supra, 274 U.S. at 223, 47 S.Ct. at 583: "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More

1. There were two pleas to the indictments; because the same issue is involved we shall treat them as one plea in this opinion.

2. "Mr. Sprague: May we see Your Honor at sidebar one moment?

Judge Hagan: Yes.

(Sidebar Discussion)

Mr. Sprague: At this time, Sir, in case No. 2 on Your Honor's trial list against the defendant, Albert Crosby, the Commonwealth moves for trial against him on Bill No. 420 of August Sessions, 1961, in which he is charged with murder. May he be arraigned on that bill, Sir?

Judge Hagan: Yes.

The Crier: Albert Crosby in this Bill 420 of the August Sessions, 1961, charging you with the murder of Robert Cliett, how plead you, guilty or not guilty?

The Defendant: Guilty generally.

The Crier: Your Honor, he enters a plea of guilty to murder generally in Bill 420.

Mr. Sprague: At this time, Sir, the Commonwealth moves for trial against this defendant on Bill No. 421 of August Sessions, 1961, in which he is charged with murder. May he be re-arraigned in that bill, Sir?

Judge Hagan: Yes.

The Crier: Albert Crosby, in this Bill 421 charging you with the murder of Georgia Crosby, how plead you, guilty or not guilty?

The Defendant: Guilty generally.

The Crier: Your Honor, he enters a plea of guilty to murder generally in Bill 421.

Mr. Sprague: Now, Sir, just for the record, the Commonwealth states that from our summary of the evidence in this case, we will not certify the case; the Commonwealth is pressing for murder in the first degree in both bills, and we would ask that three judges sit.

Judge Hagan: As to punishment the Commonwealth is pressing for what?

Mr. Sprague: We are going to press for the penalty of life imprisonment in both bills, Sir.

Judge Hagan: All right. We will take a short recess and see if I can assemble two other judges.

Mr. Sprague: May the defendant sign both bills, Sir?

Judge Hagan: Yes."

(Recess 10:25 to 11:40 A.M. A hearing before the three-judge court then followed from 11:40 to 12:50 P.M. at which time the judges retired to determine the degree of guilt.)

is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."

Normally a reviewing court is assisted by an examination of the record surrounding the entry of the plea at trial. Faced with a record that is barren of traditional inquiries made of the defendant in such cases, we are quick to recognize the difficulties now before us. There is no record as is contemplated by Pennsylvania Rules of Criminal Procedure No. 319 and its federal counterpart, Rule 11, both of which anticipate an inquiry of the defendant to form the factual basis that the plea is "competently and intelligently made" [3] or "made voluntarily with understanding of the nature of the charge and the consequences of the plea".[4]

■■ Trial courts have a duty to do more than simply listen to an articulation or a verbalization of a plea of guilty by a defendant; they have a duty to insure that the defendant understands the consequences of his act. This is not so much the result of promulgations of federal and state rules of criminal procedure as it is a part of the basic concepts of proper judicial administration in Pennsylvania [5] and in the federal courts.[6]

---

3. Pennsylvania Rule of Criminal Procedure No. 319, 19 P.S. Appendix adopted June 30, 1964, effective January 1, 1965, provides: "(a) Generally. A defendant may plead not guilty, guilty, or with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept it unless it determines that it is competently and intelligently made."

4. Federal Rule of Criminal Procedure No. 11: "A defendant may plead not guilty, guilty, or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plea or if the court refuses to accept a plea of guilty of if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea. As amended Feb. 28, 1966, eff. July 1, 1966."

5. The Supreme Court of Pennsylvania has repeatedly stressed the need for an adequate record from the trial court which would reflect the court's inquiry into the defendant's understanding of the nature of the charges against him and of the consequences of a guilty plea. Commonwealth v. Wood, 425 Pa. 612, 230 A.2d 729 (1967); Commonwealth ex rel. West v. Myers, 423 Pa. 1, 7, 368, 222 A.2d 918, 922 (1966); Commonwealth ex rel. Bar-

nosky v. Maroney, 414 Pa. 161, 165, 199 A.2d 424, 426 (1964).

In Commonwealth ex rel. Kerekes v. Maroney, 423 Pa. 337, 223 A.2d 699 at page 702 (1966), the Supreme Court of Pennsylvania said: "The task of the habeas court would frequently be less difficult if the record of the original proceedings contained a direct inquiry into the defendant's understanding of his action. Because no such inquiry was made in the instant case, the transcript of the trial proceedings itself does not disclose whether, at the time he entered his plea, appellant misapprehended the effect of the Commonwealth's decision not to seek to prove the elements of murder in the first degree upon his own desire to show mitigating circumstances. Nonetheless, our cases have not set forth a fixed procedure for determining the validity of a guilty plea; rather we have held that this is a factual issue which must be resolved on a case by case basis according to the defendant's actual understanding of his plea and his willingness to enter it." (citations omitted)

6. " 'Real notice of the true nature of the charge against him' is a right granted to the accused by the Constitution and it is indispensable to a valid plea." United States v. Davis, 212 F.2d 264, 267 (7 Cir. 1954), citing Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941). The plea must be made with a full understanding of the consequences. Kercheval v. United States, *supra.* Where it fairly appears that a plea was made under some mistake or misapprehension the accused should be permitted to withdraw it. Bergen v. United States,

We have heretofore spoken in a challenge to a guilty plea entered in a Pennsylvania court: "[T]he question whether the plea of guilty is voluntarily and intelligently made can only be determined if it is shown on the record what comprehension the accused had of the nature and elements of the charge against him, of the defenses available to him, and of the consequences which might flow from a plea of guilty, * * * and these facts should appear on the record at the time the plea is entered." United States ex rel. McDonald v. Commonwealth of Pa., 3 Cir., 343 F.2d 447 at 451 (1965.) [7]

The Pennsylvania Supreme Court has also emphasized that a court must establish such a comprehension by the defendant in murder cases even though the defendant is represented by counsel: "It would be wise for the court to make particular inquiry as to the defendant's knowledge of the nature of the charge, of his right to trial by jury, and of the general consequences of his plea. It is desirable to have such matters made known to the defendant by the court even though he be represented by counsel.

When a defendant enters a plea to murder, more is required than simply his pleading orally or endorsing the indictment, as in other cases." Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 165, 199 A.2d 424, 426 (1964).[8]

The trial court did not follow the salutary procedures suggested by tradition, established by good reason, and now mandated by the Pennsylvania Rules of Criminal Procedure. But this dereliction does not, of itself, debase the trial proceedings; the failure of the state court to have the inquiry made does not, of itself, entitle the relator to federal habeas corpus relief. There must be a factual showing that the guilty plea was not intelligently and knowingly entered; that there was an actual deprivation of his constitutionally-protected guarantee of due process.

The procedural burden of establishing the validity of a plea of guilty in such cases shifts to the government in federal prosecutions,[9] and to the Commonwealth in Pennsylvania state proceedings. United States ex rel. McCloud v. Rundle, 402 F.2d 853 (3 Cir. 1968).[10]

145 F.2d 181, 187 (8 Cir.1944). "Due process * * * requires that the plea be voluntarily and understandingly made. * * * Such understanding * * * includes knowledge and comprehension not only as to the nature of the charge, but also as to the penalty which can be imposed." Kotz v. United States, 353 F. 2d 312, 314 (8 Cir.1965).

See also 14 Am.Jur. § 270 Criminal Law. Federal Rule of Criminal Procedure No. 11 has been declared to be a restatement of existing law and practice. United States v. Cariola, 323 F.2d 180, 186 (3 Cir.1963).

The requirement of an on-the-record inquiry by the court into the defendant's understanding of the nature of the charges against him as well as the consequences of a guilty plea has led to the promulgation of the "automatic prejudice" rule of Heiden v. United States, 353 F.2d 53 (9 Cir. 1965): mere non-compliance with Rule 11 of the Federal Rules of Criminal Procedure in federal court arraignments will result in a grant of relief for the petitioner, regardless of any proof of his actual understanding.

7. We reached the same conclusion in United States ex rel. Slebodnik v. Commonwealth of Pa., 343 F.2d 605 (3 Cir.1965): "The proper and efficient administration of criminal justice can be best achieved when the facts regarding waiver clearly appear in the record assembled during the conviction proceedings. It is expected that this will be the future practice."

8. See also the Pennsylvania cases in note 5.

9. Munich v. United States, 337 F.2d 356 (9 Cir.1964): "But when there has been noncompliance with Rule 11, the Government has the burden of proving that the error was harmless, i.e., that the defendant made his plea of guilty voluntarily and with understanding of the nature of the charge." See also: Domenica v. United States, 292 F.2d 483 (1 Cir.1961); United States v. Davis, 212 F.2d 264 (7 Cir.1954).

10. In *McCloud* this court has said: "This standard would appear to be nothing more than the constitutional mandate as enunciated by the Supreme Court in Kercheval v. United States. In conformance with

Whether the plea was knowingly and voluntarily entered is always a question of fact.[11] In the absence of an adequate record at arraignment as to the factual basis on which the plea was entered, it becomes necessary to examine thoroughly the "totality of circumstances" on a case by case basis,[12] with the Commonwealth having the burden of proof on the issue. If Crosby did understand the nature and consequences of his plea of guilty, he is entitled to no relief, irrespective of the trial court's failure to conduct an inquiry into the factual basis of the defendant's knowledge and understanding of the technical plea entered. United States ex rel. McArthur v. Rundle, 402 F.2d 701 (3 Cir. 1968); United States ex rel. Smith v. Hendrick, 260 F.Supp. 235 (E.D.Pa.1966), aff'd per curiam, 378 F.2d 373 (3 Cir. 1967); Kotz v. United States, supra.

 This is not to say that the action, or inaction, of the trial court is not relevant to our review. Although the non-observance of the recommended procedure of conducting an inquiry into the extent of the defendant's understanding is not conclusive on the issue, it nevertheless forms an integral part of the totality of circumstances which must be considered in determining whether the plea was knowingly entered. We must now proceed to examine other relevant circumstances attendant to the entry of the plea. In this respect, the nature of the legal advice and information imparted from attorney to client, and the facts adduced at trial become relevant on the issue of the defendant's actual, rather than presumptive, understanding of his plea.

There being no dialogue on the record relating to the quality of the relator's understanding, it becomes necessary to examine the testimony of the trial counsel describing his counseling experience (taken at the habeas corpus hearing before the District Court), and to review the testimony of the relator at the hearing on the guilty plea.

 Our inquiry becomes important because of the technical particulars of the Pennsylvania law of homicide, and the peculiar nature of the facts before us. The relator admitted firing the shots that caused the fatal wounds. Admitting to an act of homicide, however, is not tantamount to confessing criminal liability. In Pennsylvania, homicide may be justifiable or excusable, and thus carry no criminal guilt in the legal sense.[13] If

this requirement, recent decisions of the Pennsylvania Supreme Court have imposed upon the Commonwealth's trial courts the responsibility of determining whether a guilty plea is knowingly and voluntarily entered. This combination of factors leads to the conclusion that * * * the Commonwealth had the burden of proving that appellant's guilty pleas were voluntary." Citing Commonwealth v. Garrett, 425 Pa. 594, 229 A.2d 922 (1967); Commonwealth ex rel. West v. Myers, 423 Pa. 1, 222 A.2d 918 (1966); Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 199 A.2d 424 (1964).

11. Traditionally in Pennsylvania there has been a presumption that a defendant who enters a plea of guilty understands the consequences of his act. Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967). The presumption may be rebutted by showing actual lack of understanding, even where the defendant was represented by an attorney. Commonwealth ex rel. McKenna v. Ca-

vell, 423 Pa. 387, 224 A.2d 616 (1966). Where there is no record of the state proceedings or where the record discloses that the trial judge did not properly question the defendant in accepting the plea, the presumption is of doubtful validity, United States ex rel. McCloud v. Rundle, supra.

12. See Commonwealth ex rel. Kerekes v. Maroney, note 5, where the Court observed: "(O)ur cases have not set forth a fixed procedure for determining the validity of a guilty plea; rather we have held that this is a factual issue which must be resolved on a case by case basis according to the defendant's actual understanding of his plea and his willingness to enter it." This circuit has recently undertaken the same approach in United States ex rel. McCloud v. Rundle, supra.

13. Commonwealth v. Lawrence, 428 Pa. 188, 236 A.2d 768, 770 (1968): "A *justifiable* homicide is one committed either by command of, or at least with the permission of, the law, e.g., execution of a

an indictment is returned against the actor, whether the taking of life by him is justified or excused becomes a jury question, capable of being raised only in a plea of not guilty.[14] Illegal and unlawful homicide is murder or manslaughter, depending upon attendant circumstances; and one indicted for these crimes may plead "guilty generally" to the charges, and thereby waive his constitutionally protected right of trial by jury.[15]

██ Pennsylvania law [16] permits the defendant to waive trial by jury in all criminal cases "except murder and treason". Commonwealth v. Petrillo, 340 Pa. 33, 16 A.2d 50 (1940). A voluntary plea of guilty is a formal confession of guilt and is equivalent to a jury verdict, Commonwealth v. Simmons, 361 Pa. 391, 65 A.2d 353 (1949); it operates as a waiver of all the constitutional, statutory, and judicially created safeguards afforded a defendant in a trial determination of guilt, including the right to be confronted by and to cross-examine his accusors, Commonwealth ex rel. West v. Myers, supra; it also operates as a waiver of the privilege against self-incrimination, Commonwealth ex rel. Blackman v. Banmiller, 405 Pa. 560, 176 A.2d 682 (1962); and it admits the facts pleaded in the indictment so as to obviate the necessity for corroborating evidence. Commonwealth ex rel. Hough v. Maroney, 425 Pa. 411, 229 A.2d 913 (1967).

██ The defense of excusable homicide—self-defense—denies the existence of any criminal guilt on the accused's part. Although it admits the act of homicide, it denies the crimes of murder or manslaughter.[17] A claim of excusable homicide logically and legally contradicts a plea of guilty to murder.[18] This distinction, basic hornbook law though it be, becomes singularly critical when an examination of the testimony of the proceedings below fails to convince us that appellant's trial counsel understood this at the time of the trial in 1962 or even by the date of the District Court habeas corpus hearing five years later.[19]

---

convicted criminal, apprehension of an escaping felon, etc. An excusable homicide is one committed either *per infortunium* (i.e., accidentally) or *se defendendo* (i.e., in self-defense). IV Blackstone, Commentaries, 178–186." (Emphasis supplied)

14. Commonwealth v. Collago, 407 Pa. 494, 180 A.2d 903 (1962); Commonwealth v. Capalla, 322 Pa. 200, 185 A. 203 (1936); Commonwealth v. Breyessee, 160 Pa. 451, 28 A. 824 (1894).

15. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

16. Act of June 11, 1935, P.L. 319, No. 141; 19 P.S. § 786, as amended. Waiver of trial by jury requires the consent of defense counsel, the district attorney, and the court.

17. "The dividing line between self-defense and * * * manslaughter seems to be the existence, as the moving force, of a reasonably founded belief of imminent peril to life or great bodily harm, as distinguished from the influence of an uncontrollable fear or terror, conceivable as existing, but not reasonably justified by the immediate consequences. If the circumstances are both adequate to raise. and sufficient to justify, a belief in the necessity to take life, in order to save oneself from such a danger, where the belief exists and is acted upon, the homicide is excusable on the theory of self-defense (citations omitted) * * * [I]f the act is committed under the influence of an uncontrollable fear of death or great bodily harm, caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense, the killing is manslaughter." Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571 (1911).

18. "* * * [S]elf-defense has no place in a definition of manslaughter or any other degree of homicide as it excuses, rather than fixes the degree of, the homicide and entitles accused to a full acquittal." 40 C.J.S. Homicide § 116.

19. There may be some temptation to equate the precise issue before us with the problem of a claimed deprivation of due process of law based on the alleged ineffectiveness of counsel in the conduct of the trial. The effectiveness of trial counsel's participation at the hearing or trial is not before us for review, as it was in United States ex rel. Darcy v. Handy, 203 F.2d 407 (3 Cir. 1953). In *Darcy*, the court was concerned with measuring the conduct of the accused's

Crosby's attorney testified that "if the evidence reveals itself so that if the self-defense 'alibi' [20] stood up that we could withdraw the plea of guilty with the permission of the court and proceed at a lesser degree." (N.T.-248) [21] Although this was his trial strategy, he candidly and freely told the hearing judge that he is not positive he ever used the words "self-defense" in discussing the case with his client (N.T.-210) although he knew that his client was relying on a "plea of self-defense" (N.T.-247); he was "not positive" he discussed with him the right of trial by jury, but he was positive that he discussed the question of the death penalty. Defense counsel stressed that the assistant district attorney told him that the Commonwealth would seek the death penalty if the plea was not guilty and that it would seek life imprisonment if a guilty plea were entered. Counsel testified he advised the entry of the guilty plea to remove the possibility of the death penalty.[22]

There is nothing on the record to indicate that defense counsel, at any time, explained to relator the legal consequences of the guilty plea other than the effect it would have on the district attorney's prosecution. On the contrary, the record reveals the following:

"A. I told Mr. Crosby that although he pleaded guilty we would have the opportunity of presenting the facts to the case.

Q. Which included that of self-defense?

A. I don't know whether I told him the words which included that of self-defense. I told him that he would have the opportunity of presenting all the facts and pre-

counsel against the constitutional mandate that the criminal defendant shall be represented by effective counsel. The issue was whether counsel had effectively conducted the defense following a plea of not guilty. The court held that the accused is generally bound by his attorney's decisions undertaken as a part of the strategy of defense. In the present case, we are not concerned with the strategy or trial tactics employed by defense counsel in the trial process, but rather with the basic question of whether the appellant comprehended the nature and effect of the plea itself. The specific professional activity subjected to our scrutiny is limited to counsel's participation in dispensing information and legal advice to his client prior to the entry of the plea. Counsel's expertise is important in the instant case only insofar as it has a bearing on the question of whether Crosby knowingly and intelligently entered a guilty plea.

20. The use of the word "alibi" by trial counsel in this context is perplexing. This is a specific defense, requiring a not guilty plea. Under Pennsylvania Rule of Criminal Procedure No. 312 it is specifically referred to as a defense, and until Commonwealth v. Bonomo, 396 Pa. 222, 151 A.2d 441 (1959) it was an affirmative defense compelling defendants to meet certain procedural burdens. Alibi has no place in a guilty plea. When self-defense is asserted, the defense of alibi is a physical impossibility. In self-defense the defendant admits to being on the scene and committing the act, but sets up circumstances excusing the homicide; in alibi the defendant contends he was not there and claims "presence in another place than that described", Bouvier's Law Dictionary, 8th Ed. 1915; " * * * so removed therefrom as to render it impossible for him to be the guilty party." Commonwealth v. Whiting, 409 Pa. 492, 187 A.2d 563, 566 (1963).

21. We have used the initials, N.T., to indicate the page number of the transcript of the federal habeas corpus hearing. Where the letter, R, appears, infra, it will refer to the page number of the record of the state court sentencing hearing.

22. Counsel did not hold himself out to be experienced in criminal law. This was his first homicide case. He attempted to remove himself, and petitioned the court prior to trial for the appointment of other counsel. The request was refused in October, 1961. The court ruled that because the twenty-two year old defendant had $50.00 in a bank and had a father who owned a neighborhood store, he could afford to hire private counsel. Trial counsel testified he received a total fee of $100.00 for representation in these two murder cases and for services rendered in a domestic relations matter.

senting his entire story to the Court, yes, I did." (N.T.-264)

He also told his client "if we did plead guilty he would still have the opportunity of testifying and presenting all the facts, that a plea of guilty did not stop all the facts to be presented to the judge". (N.T.-220) He said that relator never did question him about the meaning of the word "guilty" or what "the plea of guilty might be". (N.T.-223)

A significant part of the attorney's testimony compels the conclusion that the attorney himself did not understand the consequence of a guilty plea:

"Q. Now * * * you knew that there was a plea of self-defense in this case, or didn't you?

A. I knew that our defense was a claim of self-defense, yes.

Q. And as a matter of fact, even in the tribunal here and before the tribunal of three judges, you referred to that defense by actually pointing out evidence showing that he was being attacked, didn't you?

A. Yes.

Q. Now, will you tell me and tell the Court why you advised your client to plead guilty when he had the defense of self-defense in the case?

A. Because of the following: Number one, I believed that there was a possibility that he would receive the death penalty. I believed that if we pled guilty there would not be any pressure by the district attorney for the death penalty. I believed that if the evidence revealed itself so that if the self-defense alibi stood up that we could withdraw the plea of guilty with permission of the Court and proceed at a lesser degree * * *"

The District Court concluded that appellant's trial counsel advised his client of the consequence of his plea; the court stating that according to trial counsel, "Mr. Crosby understood * * * the nature and consequence of a guilty plea and voluntarily decided to plead guilty." We disagree. There is no such statement by trial counsel in the record, and none may properly be inferred from the testimony. Indeed, we have not been convinced that trial counsel himself understood the consequence of a guilty plea, in view of his continuing to insist that he knew his client was relying on self-defense at the time a plea of guilty was entered. This being so, it is highly improbable that relator obtained the requisite understanding of the consequences of his plea of guilty from any advice of counsel.

Thus far, we have considered in depth two important components of the "totality of circumstances" surrounding the entry of the plea of guilty: (1) the actual transcript of the arraignment and (2) the extent and quality of advice and information received by the relator from trial counsel. It now becomes necessary to examine the testimony of the relator at the criminal trial proceedings to ascertain whether he himself did understand the meaning and consequences of his plea. In doing so, we bear in mind that "a fundamental requisite of a plea of guilty is that it manifest an unequivocal and knowledgeable admission of the offense charged". Hulsey v. United States, 369 F.2d 284, 287 (5 Cir. 1966).

The only eye-witness [23] to the shooting who was called at the trial was the defendant himself, a twenty-two year old male practical nurse, married to but separated from one of the victims, Georgia Crosby. When asked why he was carrying a revolver on the day of the shooting, appellant testified that he carried a pistol occasionally because he was an auxiliary policeman, keeping it either at

---

**23.** Another witness heard "three bangs" and then shortly thereafter "two more bangs". There were three gun shot wounds found in Georgia Crosby's body and one in her companion's.

home or at his father's store. On the day of the shooting, he was going to deposit the gun at his father's house and obtain another which he was in the process of selling to a third party.

Tracing his steps on the day of the shooting, Crosby testified that he consulted his lawyer after receiving a letter from a social worker concerning his wife's receipt of welfare payments while being supported by the appellant. He went to his wife's apartment [24] to discuss the matter with her. After entering the apartment, he saw his wife "and another boy engaged in sexual intercourse in front of my three children" [25] (R-47), whereupon he backed out of the door and talked with the children while "my wife and this fellow went into the bathroom". (R-48) Crosby said that his wife reappeared, and, at first, Cliett, his wife's companion, remained in the bathroom:

"Well, anyway, I told her it wasn't right to accept money from me and get welfare checks too, it wasn't lawful. She either had to accept my money and leave the welfare alone, that was the idea. So later on she said something about she could get away with anything, and she was going to put more children on me, and she could get away with going to court, because I was married to her. She would say she did it before. (R-50)

" * * * Well, I said I was going to go and see Mr. Tucker [social worker]. Then she jumped up and said something, and then she told this boy to get me. So this boy grabbed between the bathroom and the closet, a concealed portion there, and grabbed sort of a plank or board, I don't exactly know what it was. Anyway, he came towards me with it wildly, angrily, and I—well, I had the gun in my belt. It was loaded; I don't know how many shots it had in it, but I pulled it and fired in his direction, and from that I don't exactly know what happened. I didn't fire to hit him, but I just fired in his direction." (R-51)

He said that he didn't remember how many shots he fired, and that when Cliett was coming toward him with the plank, the wife was "either directly behind me or somewhere near the door".[26] (R-52) The sole thrust of the brief cross-examination by the Commonwealth, constituting only five pages of transcript, was an inquiry into the claim of self-defense relating to the precise position of Mr. Cliett at the time he was fired upon. Crosby said that Mr. Cliett was swinging the plank at him at the time he fired, that the door behind him was closed, and that "it was impossible for me to run out". (R-57)

Following the determination of the degree of homicide to be first degree murder, the defendant was asked if he desired to say anything before sentence was imposed. His reply was as follows:

"Yes, I would just like to say that my wife, she didn't mean the children any good, and she didn't mean me any good, and she only held the children to get money from me and also to just destroy them. And I didn't go over there to commit any crime of any kind. It just so happens that she wanted this boy to get me, and I was trying to protect myself to get out of there, and I didn't mean to shoot her at all, and just trying to get him away from me so he wouldn't hurt me.

"And I want to be with my children very bad. That's all. I love them, which nobody else probably does but me." (R-68)

24. Crosby was living with another woman at this time.

25. A witness described the children as "a little boy around 4, a little girl around 3, and a baby maybe a year or a little over". The letter, R., refers to the page number of the record of the state court sentencing hearing.

26. Commonwealth's Exhibit No. 5, a photograph which portrayed the position of Cliett's body following the shooting, also disclosed a plank which was identified by Crosby on direct examination as the one wielded by his attacker.

His assertion that he "didn't mean to shoot her at all" was not an unequivocal admission of guilt. His claim that he was trying to protect himself from harm was more consistent with a plea of not guilty by reason of self-defense than a plea of guilty to murder. As was noted in *Hulsey,* a plea of guilty "should not be accepted if so limited or conditioned that it constitutes * * * little more than an ambiguous expression of qualified guilt coupled with a protestation of innocence".[27]

When Crosby's testimony introduced the element of self-defense, an infirmity crept into the plea of guilty. The articulation of the defendant's words "guilty generally" signified a formal confession of guilt as a matter of law equivalent to a jury verdict of guilty, Commonwealth v. Simmons, supra, but the words he used to describe the incident contravened this formal confession. His testimony injected the doctrine of self-defense and thereby created an issue of fact. Commonwealth v. Collazo, supra; Commonwealth v. Capalla, supra; Commonwealth v. Breyessee, supra.

Under Pennsylvania law neither a single judge nor a panel of judges may resolve such an issue of fact. The Act of June 11, 1935, P.L. 319, No. 141, as amended, 19 P.S. 786, prohibits a waiver of trial by jury in murder cases,[28] and where a defendant pleads guilty to a murder indictment and appears before a judge without a jury, he is not asking that the fact of his guilt or innocence be determined by a judge rather than a jury. This he cannot do in a murder case in Pennsylvania. By pleading guilty, he does not waive the right of trial by jury to determine the facts; instead, by the very nature of his plea he is asserting that there is no factual issue of innocence to be resolved by any jury.

In addressing itself to this phase of the case, the opinion of the District Court states: "Relator gave completely unsatisfactory answers when questioned by the court as to why he did not retreat. Evidently the court totally rejected relator's story that Cliett ever wielded such a board." Unfortunately, the District Court misconstrued the appropriate function of a Pennsylvania trial court in a proceeding to receive testimony on a plea of guilty to a murder indictment. Where such plea is entered, it is not the province of the court to accept or reject testimony tending to establish self-defense. Similarly, it is not the responsibility of the judge presiding in a habeas corpus hearing to evaluate the quality of such a defense. A determination of the defense of justifiable homicide—self-defense—is exclusively a jury question which may be raised only in a plea of not guilty.

Crosby's testimony must be considered as much a part of his plea as his uttering of the words, "guilty generally". Bergen v. United States, 145 F.2d 181 (8 Cir. 1944).[29] An examination of the

---

27. *Hulsey,* supra, was decided before the present Federal Rule 11 was adopted and does not represent an application of the Rule's proscription that a guilty plea shall not be accepted unless the court is satisfied that there is a factual basis for the plea. The rationale of *Hulsey* is based on a denial of due process and is, therefore, equally applicable to federal and state proceedings.

28. The section of the Pennsylvania Constitution preserving the right of trial by jury, Art. 1, Section 6, P.S., has been interpreted to mean that there can be no waiver of trial by jury by an accused in the absence of a showing of legislative sanction for such a procedure. Common-

wealth v. Hall, 291 Pa. 341, 140 A. 626, 58 A.L.R. 1023. The Act of 1935 which provides for waiver of jury trials, specifically excepts murder cases.

29. In *Bergen,* the defendant gave a written statement to the trial judge at the time he entered his plea of guilty. The statement was given in explanation and qualification of the plea. The court held that such a plea could not be accepted. We perceive no valid distinction between *Bergen* and the present case. In both instances, the accused presented evidence inconsistent with the guilty plea, the only difference being that the words in *Bergen* were written whereas Crosby's words were spoken. The fact that the plea in

testimony compels the conclusion that he did not understand nor comprehend the consequences of entering a plea of guilty.

Applying the test of "totality of circumstances", namely, relator's age and background, his obvious confusion demonstrated by repeated switching of pleas on the occasion of three separate arraignments, the trial court's failure to conduct any inquiry into his understanding of the nature and consequence of his guilty plea, his trial counsel's obvious lack of familiarity with Pennsylvania criminal law and procedure, the failure of trial counsel to explain to his client—at any time—the nature of a guilty plea and the technical niceties attending the proper assertion of self-defense in a murder trial, and relator's testimony at trial which basically contradicted the plea of guilty, we must conclude that the plea was not entered with the requisite understanding necessary to satisfy the constitutional requirements of due process of law.

Accordingly, we will vacate the order of the court below and remand the case with the direction that the District Court issue a writ of habeas corpus without prejudice to the right of the Commonwealth of Pennsylvania to undertake appropriate action in the further prosecution of this matter.

*Bergen* was issued simultaneously with the qualification is not in our opinion significant enough to distinguish it from the present case.