**UNITED STATES of America ex rel. Jesse YOUNG**

v.

**James R. MARONEY.**

**Misc. No. 69-75.**

United States District Court, E. D. Pennsylvania.

Dec. 31, 1969.

---

**110**

David Rudovsky, Asst. Defender, Melvin Dildine, Chief of Appeals, Vincent J. Ziccardi, Philadelphia, Pa., for petitioner.

Joseph J. Musto, Asst. Dist. Atty., for Arlen Specter, Dist. Atty., Philadelphia County, for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

Relator, presently incarcerated in the State Correctional Institution, Pittsburgh, Pennsylvania, has filed a petition for a writ of habeas corpus attacking the lawfulness of his continued detention by the Commonwealth of Pennsylvania.

On September 20, 1950, relator and a co-defendant, John L. Collins[1], were sentenced to terms of life imprisonment after guilty pleas to a murder indictment.[2] Relator alleges that his plea of guilty is void because it was induced by an involuntary confession.

The factual background involving the indicted crime of homicide in the perpetration of the robbery of a Philadelphia taproom on January 16, 1950, is narrated in my opinion in United States ex rel. Collins v. Maroney[3], 287 F.Supp. 420 (E.D.Pa.1968).

Upon appeal of a denial of relief in a Post-Conviction proceedings in the State Courts, the Supreme Court of Pennsylvania held that the relator's confessions were indeed coerced, but that the unconstitutional confession might not have induced the guilty plea. Commonwealth v. Young, 433 Pa. 146, 249 A.2d 559 (1969). It has in fact been stipulated by counsel for both sides that relator's confession was indeed involuntary. (N. T., 3–4). Thus as a matter of law relator's federal constitutional rights were breached in the taking of the confession, and, absent waiver, the confession would have been inadmissible in a jury trial where the defendant had plead not guilty. The sole issue before this Court is whether the relator's unconstitutional confession rendered the subsequent guilty plea involuntary and thus void.

The circumstances surrounding relator's confession and plea are similar to those of his co-defendant, Collins, where I held the plea void and ordered Collins released. But in the relator's case, the Commonwealth argues for continued custody by highlighting a supposedly significant difference between relator's and his co-defendant's case. In its brief and at the hearing before this Court, the Commonwealth urged that the strong eyewitness testimony in relator's case

---

1. I ordered the relator's co-defendant released after a full evidentiary hearing in United States ex rel. Collins v. Maroney, 287 F.Supp. 420 (E.D.Pa., 1968); a third co-defendant, Smith, was separately tried, after a plea of not guilty, and convicted. Smith is also no longer in custody. See Notes of Testimony at Federal Habeas Corpus Hearings (hereinafter referred to N.T.), p. 12.

2. Bill of Indictment No. 2, March Sessions, 1950, Court of Oyer and Terminer in and for the County of Philadelphia, Pennsylvania, September 20, 1950.

3. The Notes of Testimony from Collins' habeas corpus hearing were made a part of the record at the relator's federal habeas corpus hearing as Exhibit 2.

distinguished it from *Collins, supra.* Further, the Commonwealth argued that the fact of positive identification induced the plea of guilty. The Commonwealth's position is augmented somewhat by the unwillingness of the Supreme Court of Pennsylvania to overrule the Post-Conviction hearing Judge's finding that the *plea* was voluntary; the State's highest tribunal, relying on my opinion in *Collins, supra,* was willing, however, to overrule the hearing judge's factual determination on the voluntariness of relator's *confession.*

At the hearing before me, the relator was the only witness to testify since his two court appointed attorneys are now deceased. The testimony at the relator's Post-Conviction Hearing Act hearing as well as the notes of testimony at the original trial to determine the degree of guilt [4] were made part of the record.

After holding a plenary hearing and reviewing carefully the briefs submitted by both sides, and a supplemental brief submitted by counsel for the relator, for the reasons stated hereafter, I have decided that a writ should be granted because relator's guilty plea was in fact tainted by his admitted constitutionally infirm confession, and thus void.

■■ The first step of inquiry is to ascertain upon whom the burden of proof rests in this collateral attack on the guilty plea. Relator's plea was entered in 1950, and thus at a time prior to the more recent Supreme Court opinions which have articulated more precise standards of inquiry for a trial judge in accepting a guilty plea. *Cf.* Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); See, also, Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196 (1967). As to the latter doctrines articulating a trial judge's obligation to conduct an in-

quiry of a defendant, the instant case is a "silent record". For the relator was only asked as to the various bills of indictment to which he had plead not guilty whether he wished to withdraw his pleas. The relator responded that he did want to withdraw his plea and then responded "guilty" to the question of "how do you plead?". (See, Exhibit 1, the Notes of Testimony of the Arraignment, pp. 1–4, following the Notes of Testimony at the trial to determine the degree of guilt). Since the voluntariness of a plea of guilty is a matter of federal constitutional law, a federal standard is applicable. United States ex rel. Smith v. Hendrick, 260 F.Supp. 235 (E.D.Pa., 1966) aff'd. per curiam, 378 F.2d 373 (3d Cir., 1967). Our Court of Appeals has recently reiterated, in unequivocal language, that it is the Commonwealth's burden to prove the validity of a guilty plea where there is not on the record inquiry that affirmatively shows that the defendant made a knowing and intelligent plea of guilty. United States ex rel. Fink v. Rundle, 414 F.2d 542 (3d Cir., 1969). Accord: United States ex rel. McCloud v. Rundle, 402 F.2d 853 (3d Cir., 1968); United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3d Cir. 1968).

■ As the Pennsylvania Supreme Court viewed the testimony at relator's Post-Conviction hearing, it was sufficient to uphold the plea of guilty that:

"This is a case where even without the confession, the Commonwealth still had strong evidence, most importantly an eye witness. *Thus appellant well might have entered a guilty plea in order to reduce his changes of getting the death penalty after a conviction that may have appeared inevitable even if the confession was suppressed."* Commonwealth v. Young, 433 Pa. 146, 249 A.2d 559, 561 (1969). (Emphasis added.)

4. Exhibit 1, is the Testimony taken at the guilty plea. Exhibit 3 is the Testimony taken at the Post-Conviction Hearing Act hearing on December 14, 1967.

As I read the standards imposed on me by our Court of Appeals, I am precluded from conjecturing whether the plea "well might have [been] entered", to reduce his chances of being sentenced to the electric chair. I must ascertain whether the Commonwealth has proven that the plea was *in fact* entered either because of the potential eye witness testimony or because of the potential of the death penalty, and thus my present dilemma arises. For, I find the Commonwealth's proof inconclusive. The plea "might have been" entered because of the eye witness testimony or it might not. Likewise, the plea "might have [been] entered" to avoid the death penalty or it might not. Having failed to tip the scales by a preponderance of the evidence in their favor, I must find against the Commonwealth.

Relator testified on direct examination that he was not aware that he had been positively identified in a police lineup. (N.T., 7–8). In opposition, upon cross-examination, and through citations to various parts of the record, the Commonwealth attempted to demonstrate that objectively the state had eyewitness testimony [5] sufficient to convict relator of first degree murder. In cross-examination of the relator, the Assistant District Attorney, at best elicited inconclusive testimony of the motivational force of identification in the relator's decision.

"BY MR. MICHEL:

"Q. And you never overheard any voice identifying you by your name?

"A. No, sir, not by my name. (N.T. 26).

    \*    \*    \*    \*    \*    \*

"Q. After the lineup didn't the detective tell you that you had been one of the men identified?

"A. Never did the detective say, 'Jesse Young, you have been identified from no lineup.'

"Q. What you are telling us is that he didn't use your name. He said you were identified but didn't say, 'You, Jesse Young.'

"A. I told him I heard them say 'that's him.' 'That's him.' 'That's him.' That's all I heard." (N.T., 27).

Relator further testified that he was not identified at the preliminary hearing (N.T., 28). The District Attorney's Office was unable to obtain the transcript of the preliminary hearing as instructed to do so by me (N.T., 30), to discredit or corroborate relator's assertion. On the state of the present record, I am unable to make a finding of whether relator was identified at the preliminary hearing.

Relator testified that any possible eye witness identification was irrelevant to his decision to plead guilty:

"THE WITNESS: I still entered the guilty plea because I had signed the confession.

"BY THE COURT: No, no. I am not asking why you entered the guilty plea. Your position is that—well your counsel has stated it in his brief. I am trying to just find out what were the operative facts. *Did you think that there was any possibility that any of the customers or the bartender would be able to identify you as having been present when this robbery occurred?*

"THE WITNESS: *Your Honor, being truthful at the time I didn't even think about that. I didn't give that a thought.*

"THE COURT: So, that you thought it was totally immaterial in your entry of the guilty plea as to whether there were or were not eye witnesses. Is that your position?

---

5. In these proceedings, we do not consider either the fact that no one witnessed the blow that apparently killed the victim (Exhibit 1 at 17–18, 22, and Exhibit 2 at 5), or the propriety or actual legality of "any understanding" regarding sentence if a plea of guilty were entered. Exhibit 1 at 41–42.

"THE WITNESS: Yes, sir. At that time I didn't—I don't think I thought about the eye witness." (N.T., 35) (Emphasis added.)

In his plea for leniency in sentencing at the original trial, court appointed counsel, corroborates the relator's assertion of the determinative nature of the unconstitutional confession in the guilty plea:

"When I first went down to talk to him, he was not going to plead guilty, but when I talked to him later on, he frankly and candidly admitted everything he had stated to the police." (Exhibit 1 at 124.)

The Assistant District Attorney in his statement at sentencing on September 20, 1950, made a statement even more corroborative of relator's testimony that his illegal confession induced his plea:

"But in view of all the facts of the case, the fact that *if it had not been for these two men having made confessions*—and Sergeant McDermott will tell you that one of these men stepped forward and he said, 'I am going to tell you the truth, I don't give a damn what the others do,' and he told the truth—I say if it had not been for that, *it might have been difficult to connect all of them with the holdup by reason of the failure of the witness Riggs*, who first stated positively that he saw Smith strike Hill and then later recanted down in the District Attorney's office, and if it had not been for the confessions of these two men in the manner in which they did confess, especially as to the statements given to Sergeant McDermott, their own written statements—" (Exhibit 1 at 131) (Emphasis added.)

Under the "totality of circumstances," the Commonwealth has failed to prove, as it is required to do, that relator's guilty plea was voluntary. United States ex rel. Crosby v. Brierley, *supra*. When I view, from a chronological distance of nearly twenty years, the fact of two unconstitutional confessions and the relator's testimony before me of the ir-relevancy of any identification evidence to his decision to plead guilty, I find that the Commonwealth has failed to prove that relator's plea was not induced by the unconstitutional confession.

Relator had also never been arrested before. (Exhibit 1 at 108). He may have known he was guilty of robbery or other crimes, but, "I cannot say with any assurance that under those circumstances the relator would have entered a guilty plea" to murder. United States ex rel. Cuevas v. Rundle, 258 F.Supp. 647, 656 (E.D.Pa., 1966).

The death of both attorneys for the relator, the absence of the transcript from the preliminary hearing, and the fact that the Commonwealth had the burden of proof in this case, enforces the relevance of Justice Douglas' comment:

"What is at stake for the accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought. * * [citations omitted], and forestalls the spin-off of collateral proceedings that seek to probe murky memories." Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 1711–1712 (1969).

### ORDER

And now, this 31st day of December, 1969, it is hereby ordered that the judgment of conviction of September 20, 1950, is set aside; the petition for a writ of habeas corpus is granted.

It is further ordered that execution of the writ will be stayed for a period of forty-five (45) days from the date of this order within which time the Commonwealth of Pennsylvania may either file an appeal from this order or proceed with the rearraignment of relator, failing in which the writ shall issue as a matter of course.