**UNITED STATES of America ex rel. Louis SAVAGE**

v.

**Alfred T. RUNDLE, Supt.**

**Misc. No. 69–137.**

United States District Court,
E. D. Pennsylvania.

Dec. 31, 1969.

Louis Savage, pro se.

Joseph J. Musto, Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia County, for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

Before this Court is relator's petition for a writ of habeas corpus. For the reasons stated hereafter the petition is denied.

The relator is presently serving a sentence of four to twelve years after a conviction for voluntary manslaughter in the State Correctional Institution, Graterford, Pennsylvania. His sentence was imposed after a general plea of guilty to a murder indictment and after an evidentiary hearing to determine the degree of guilt.[1] On a previous occasion I remanded the relator to the state courts for failure to exhaust his state remedies by treating his "Motion for Removal" of a Post-Conviction Hearing Act petition as a petition for a writ of habeas corpus. See United States of America, ex rel. Savage v. A. T. Rundle, Miscellaneous No. 3795, April 16, 1968. It now appears that the relator has exhausted his state remedies.[2]

In his petition for a writ of habeas corpus, the relator alleges that his plea of guilty was not knowingly and intelligently entered; his continued detention by state authorities is alleged to be unlawful on any one of three theories. The relator first attacks the failure of the trial court to order a presentence investigation and psychiatric report into relator's background. Secondly, the relator alleges that in the Post-Conviction Hearing Act proceedings the court "erred in failing to consider the Prison Classification finding of mental defectiveness". Presumably relator contends that this Prison Classification finding made subsequent to his guilty plea establishes that his guilty plea was not or could not have been intelligently and knowingly entered. Finally relator contends that the Post Conviction Hearing Act Petition Court also erred in its refusal to order further psychiatric studies in its evaluation that relator had the requisite mental ability to enter a knowing and intelligent plea of guilty.

1. Bill of Indictment No. 1155, December Sessions, 1965. In the Court of Oyer and Terminer, General Jail Delivery, and Quarter Sessions for the City and County of Philadelphia.

2. In Commonwealth v. Savage, 433 Pa. 96, 249 A.2d 304, January 15, 1969, the Supreme Court of Pennsylvania for the Eastern District, decided, with written opinion, the relator's appeal from a denial to him of Post-Conviction Relief.

452

Relator avers that a presentence investigation would have contained information about his personal characteristics, financial conditions, and other circumstances affecting his mental attitudes. He alleges that he was mentally defective at the time his plea of guilty was accepted by the trial court. In addition, he contends that the trial court accepted his plea after brief questioning and that the trial judge neither ascertained why the relator was pleading guilty, nor did the court determine whether the plea of guilty was voluntary. Relator alleges that in fact his court-appointed attorney entered the guilty plea without relator's consent. Prior to the entry of the plea, relator claims he had not discussed the plea and its consequences with his counsel.

By way of "Supplemental Petition and Rebuttal", relator further asserts that Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (June 2, 1969) is dispositive in his favor of the central issue of whether the plea was voluntary.[3] There, the Court held that it was error for a state trial judge to accept a plea of guilty without an affirmative on the record demonstration that the plea was intelligently and voluntarily made with a full understanding of its consequences.

■ The issues raised by the relator can be decided without an evidentiary hearing. An examination of all the state court records in relator's case reveals that the trial court had decided the issue of voluntariness of relator's guilty plea in accepting the plea. Furthermore, in the state collateral proceedings, an evidentiary hearing was held on whether the guilty plea was voluntary vel non. At this hearing, as at trial,

relator was represented by counsel and was given an opportunity to present evidence and to testify. When relator appealed the denial of relief in the post-conviction proceeding, the Supreme Court of Pennsylvania wrote a well reasoned opinion also denying relator any relief. In its opinion, the Supreme Court of Pennsylvania commented on the evidence presented and applied the correct constitutional standards in rejecting relator's general and specific grounds. In a case such as this one, where an examination of all the state records indicates that issues have already been resolved against relator's contentions after a "full and adequate hearing", a federal court is not obligated to hold an evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 312–313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) ; United States ex rel. Rowles v. Myers, 407 F.2d 1332 (3d Cir. 1969) ; See also United States ex rel. Thomas v. Maroney, 406 F.2d 992 (3d Cir. 1969).

■ The requirements of due process of the Fourteenth Amendment are that a plea of guilty be made voluntarily, after proper advice, and with full understanding of its consequences. United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3d Cir. 1968). Because the inquiry of the relator conducted by the able trial judge, the Honorable James T. McDermott, is a model of how a state trial judge should discharge this constitutional duty, and because, further, the inquiry refutes relator's central contention that his plea was involuntary, I deem it appropriate to quote extensively from the transcript of the trial:

"MR. SAVITT: We've discussed it with the defendant and under those circumstances we would like to enter a plea.

3. At one point in the somewhat complicated state collateral proceedings, relator filed a supplemental brief alleging that he had been denied effective assistance of counsel in his original trial. When counsel was finally appointed for the relator in the Post-Conviction Hearing Act proceedings in accordance with Commonwealth v. Richardson, 426 Pa. 419, 233 A.2d 183 (1967) and Commonwealth v.

Hoffman, 426 Pa. 226, 232 A.2d 623 (1967), and a hearing was held, court-appointed counsel failed to raise the issue at the hearing. The relator does not raise the issue of ineffective assistance of counsel in his petition filed in this Court. I have thus treated the claim of ineffective assistance of counsel as abandoned by the relator.

"MR. STEVENS: Would the Court care to interrogate the defendant regarding that plea?

"THE COURT: (Addressing the defendant.) You are Louis Savage?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: You live at 1623 Christian Street?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: You know, Mr. Savage, in this Bill of Indictment you have been charged with murder generally by the Grand Jury, you've been charged with murder, do you understand that?

"DEFENDANT SAVAGE: Yes, sir. I understand it.

"THE COURT: All right, sir. Now I understand that you intend to plead guilty to murder generally, is that correct?

"DEFENDANT SAVAGE: Yes.

"THE COURT: Have you discussed this with your counsel here present?

"DEFENDANT SAVAGE: Yes.

"THE COURT: Have you discussed this with your attorney?

"DEFENDANT SAVAGE: Yes.

"THE COURT: And I understand that you intend to plea guilty to this Bill of Indictment?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: You have discussed your plea of guilty with your lawyer?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: Now Mr. Savage, you understand that your plea of guilty to murder generally may encompass severe penalties. One of the penalties that may be involved here is life imprisonment, do you understand that?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: Do you also know, sir, that the other penalty that may be involved here is death in the manner approved by law, do you understand that?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: Now do you understand that upon your plea of guilty the District Attorney's Office says that your crime rises no higher than murder in the second degree?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: If you are convicted of murder in the second degree, you could be imprisoned for a period of ten to twenty years, do you understand that, sir?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: You also know that after evidence has been given before this Court the evidence may show that in spite of what the District Attorney says, the case rises to it may be considered murder in the first degree?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: At which time, as I've indicated to you before, the penalties are life imprisonment or death in the manner approved by law?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: Do you understand this now?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: And understanding now, no matter you wish to enter a plea of guilty, is that correct?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: You understand that you have a right to be tried by a Jury in this matter, you know that, don't you?

"DEFENDANT SAVAGE: Yes.

"THE COURT: You know that your plea of guilty will be heard by this Court alone, do you understand that?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: Except if it be that this case rises higher than murder in the second degree, then your case will be heard by three Judges instead of one, do you understand that?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: You are familiar, fully familiar with all of this matter?

"DEFENDANT SAVAGE: Yes, sir.

"THE COURT: And gentlemen, have you acquainted the defendant with all the possibilities?

"MR. CZAP: Your Honor, I spoke with him preliminarily at the House of Detention some weeks ago. Mr. Walsh also talked with him this morning. I had a talk with him, Mr. Savitt, and I explained the situation to him, told him he had an opportunity to show how the crime actually happened, and if the Court believes that it happened the way he said it did, tell it to the Court, that the Court would find him guilty of manslaughter. Or, if it were found justifiable homicide, then the matter could be reviewed again by the Court. He does know that there are penalties that are possible. He understands the extent of those penalties, and we believe as counsel that he's making the plea intelligently.

"THE COURT: And Mr. Stevens, I'm asking you if it is proper that this Court hear the charges without two other judges?

"MR. STEVENS: Yes.

"THE COURT: Counsel, are you satisfied of that?

"MR. SAVITT: If Your Honor please, perhaps it would be best if counsel discuss this matter in chambers with you before you do begin.

"THE COURT: Yes, I do want to make sure that the defendant understands what he is doing. Do you understand?

"DEFENDANT SAVAGE: Yes, sir.

"MR. STEVENS: May we take his plea?

"THE COURT: Yes.

"(The Defendant, Louis Savage, was arraigned and pled guilty to Bill of Indictment Number 155 [sic] of December Sessions, 1965 charging him with murder generally.)

"THE COURT: All right, gentlemen, do you wish to see the Court?

"MR. SAVITT: Yes, sir.

"(Discussion in chambers.) (N.T., 3–9).[4]

Relator's contention that his plea was accepted by the trial court after only brief questioning is refuted by the portion of the transcript at trial quoted above. The trial judge conducted the most painstaking inquiry of the relator. Based on the trial record, relator's assertion that his counsel actually entered the plea is false. The record shows that the relator entered the plea. Likewise, the claim that his court-appointed attorney failed to discuss the consequences of the plea is disproved by the record. The court-appointed counsel stated in open court that the relator had been fully advised regarding the consequences of the plea and the manner in which that consultation had taken place. Furthermore, the relator took the stand to testify at his trial and did so in a coherent and extensive fashion about the circumstances surrounding the crime. (N.T., 93–116). Contrary to relator's allegations, I find that the trial court record amply demonstrates that the plea of guilty was intelligently and voluntarily made with a full understanding of the consequences.

■ The conduct of the Post-Conviction Hearing Act Petition proceedings and the testimony given there by the relator in no way modifies my conclusion based upon my examination of the trial transcript that the plea was voluntarily entered. For in the state collateral proceedings as here, the relator has the burden of proving his plea was involuntary, or that he was incompetent to plead guilty and participate with counsel in a rational defense. United States ex rel. Rivers v. Myers, 384 F.2d 737, 742 (3d Cir. 1967).

■ The allegation that the Post-Conviction Hearing Act Court failed to consider the Classification Summary from the state prison, compiled shortly

4. Throughout this opinion "N.T." refers to notes of testimony at the original trial; and "P.C.H.A." refers to testimony taken at the Post-Conviction Hearing Act Petition evidentiary hearing.

after relator's incarceration in May, 1966, is contradicted by the record. The Classification Summary stating that the relator, "apparently has defective intelligence which may be attributable more to cultural deprivation than to limited talents", was admitted into evidence and stipulated to as true by counsel (P.C. H.A., pp. 10–11). In reaching its conclusion that the plea was voluntary, the judge in the post-conviction proceedings considered the low intelligence of the relator, as well as his testimony before that court and the transcript at trial. (P.C.H.A., pp. 20–22). The Pennsylvania Supreme Court noted the same considerations, including the fact that the relator's tested intelligence was low, and I concur with their judgment. I have thus found that relator's second allegation is without merit.

The attack on the failure of the Post-Conviction Hearing Act judge to order further psychiatric and mental studies in his evaluation of the relator's capacity to enter a voluntary plea of guilty is in effect an assertion that he is entitled to yet another and more extensive hearing on the voluntariness of his plea. Under the Pennsylvania Post-Conviction Hearing Act Petition, relator is not entitled to a hearing on his competency to plead guilty since his allegations were contradicted by the record. Commonwealth v. Savage, supra; Commonwealth v. Stokes, 426 Pa. 265, 268, 232 A.2d 193 (1967). Relator testified that his court-appointed attorney had entered the plea without relator's consent, that the trial judge said only a few words to relator, and that he could not hear or understand the questions put to him (P.C.H.A., pp. 8, 13–15). As stated before, these factual allegations are contradicted by the record of the trial to determine the degree of guilt, and the Post-Conviction judge found

against the relator's claims. Where the state courts after a full and adequate hearing, as in this case, have determined the issue adversely to relator's contentions, the relator is not entitled to a federal habeas corpus evidentiary hearing on the same issue. Townsend v. Sain, *supra.* The failure to order further studies was a matter well within the state court's discretion, considering the wealth of other evidence before the court in this case.

Since the relator never raised the issue of the failure to order a presentence report in any of the state proceedings, I have not considered that question by reason of the failure to exhaust state remedies.

Finally, the contention that Boykin v. Alabama, *supra,* is conclusive in relator's favor is ill founded. As amply demonstrated by the quoted portion of the record, relator's case is wholly unlike *Boykin.* For here, the trial judge conducted a full on the record inquiry in order to determine whether relator's plea was voluntary; whereas in *Boykin* there was a "silent record", and the Supreme Court found that "So far as the record shows, the judge asked no questions of petitioner [Boykin] concerning his pleas, and petitioner did not address the court". 89 S.Ct. 1710.

Alternatively, our Court of Appeals has held that *Boykin* is not to be applied retroactively. United States ex rel. Hughes v. Rundle, 419 F.2d 116, 3d Cir., November 14, 1969. *Boykin* cannot be applied to this case because relator's plea was accepted in April, 1966 and *Boykin* was decided on June 2, 1969. If the Supreme Court were to disagree with the Court of Appeals' view as stated above, *Boykin* would still not support the relator's release because of the factual . differences.