Arthur KELLY

v.

WARDEN, MARYLAND PENITENTIARY.

Nathaniel J. JACOBS

v.

WARDEN, MARYLAND PENITENTIARY.

Civ. Nos. 14473, 14933.

United States District Court
D. Maryland.

June 11, 1964.

David S. Harris, Baltimore, Md. (court-appointed), for petitioner Kelly.

John H. Ditto, Jr., Baltimore, Md. (court-appointed), for petitioner Jacobs.

R. Randolph Victor, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

These habeas corpus proceedings brought by Arthur Kelly and Nathaniel J. Jacobs, two State prisoners, have been heard together because they arise out of the same indictment and involve the same issues, namely, the legality of the arrests, the voluntariness of certain confessions or admissions, and the voluntariness of their respective pleas. Each petitioner has been represented by his own court-appointed counsel, and has been given the opportunity to present evidence or argument on any point he wished to raise.

On October 19, 1961, in the Criminal Court of Baltimore, Kelly, Jacobs and two other defendants, Hanks and Jenkins, entered pleas of guilty to the first count of an indictment charging them with robbery with a deadly weapon. Each was sentenced to twenty years in the Maryland Penitentiary by Judge Joseph L. Carter. Each petitioner filed one or more applications under the Uniform Post Conviction Procedure Act, Md. Code, Art. 27, §§ 645A–J. No testimony was taken at the hearing on any of those applications, so this Court has made an independent determination of all material facts.

The State charged that Kelly was one of three men who participated in an armed robbery of the Oppenheim Collins · store at Mondawmin Mall, in Baltimore,

on May 13, 1961, and that Jacobs, an employee of that store, had planned the robbery for the others to execute.

The evidence at the hearing before this Court, produced by petitioners Kelly and Jacobs, shows that each of them admitted his guilt to his counsel before he pleaded guilty in the Criminal Court. There is no doubt as to the guilt of either petitioner, but this Court must consider whether either Kelly or Jacobs was deprived of any constitutional right in connection with his conviction.

Neither petitioner was a credible witness; on the other hand, the Court is not prepared to accept as true all of the police testimony, particularly that which dealt with probable cause for the arrest of Kelly. The Court finds the following facts after weighing the credibility of all the evidence.

On September 6, nearly four months afer the robbery, "a man" told Sergeant Hornberger of the Western District, Baltimore Police Department, that Kelly had been spending money freely shortly after the robbery and that he believed Kelly had participated therein. The Sergeant did not remember the man's name, and it does not appear that he had ever before given information to the police. However, the man mentioned the Oppenheim Collins robbery by name, and knew the date. He said that a woman, whose name the Sergeant could not remember, would confirm his information; she visited the Sergeant the next day, but the Sergeant could not remember what she said. He kept no record of either conversation. On the evening of September 7, the Sergeant issued a "pick-up-order" to a cruising patrol, directing them "to pick up for Sgt. Hornberger, Offs. Orr and Walter for invest. assault and robbery, one Arthur Kelly", describing him, and giving two possible addresses. The approval of the district captain was not obtained for this pick-up order, although such approval was obtained for the orders later given to pick up Hanks and Jenkins. The pick-up was made in the early morning hours in accordance with established practice, to avoid danger of injury to all participants and the public, as well as to reduce the chance of escape. The officers of the cruising patrol called at the home of Kelly's wife's parents, where Kelly, his wife and children were living; two officers were admitted to the house by Kelly's mother-in-law and permitted to go upstairs to Kelly's room by his father-in-law. Kelly was awakened and was told that the officers were arresting him for assault. After they had searched his clothing, from which they removed a wallet containing several pawn tickets, he dressed and was brought to the Western Police Station shortly after 3.45 A.M. and booked for "investigation A & R for Sgt. Hornberger, Off. Marshall Orr."

Kelly was questioned briefly on Friday, September 8, and that evening about 7.30 P.M. was placed in a line-up, where he was identified by an Oppenheim Collins cashier, one of the victims of the robbery. The following day Kelly was again questioned by Sergeant Hornberger in the presence of three other officers, one of whom took down, in question and answer form, the substance of what Kelly finally said. It amounted to an admission of participation in the crime and implicated Jacobs as the planner and Hanks and Jenkins as participants in the robbery. The statement was read to Kelly by one of the officers and was signed by Kelly about 3.15 P.M. on September 9. No force, threats or promises were used to induce the confession, but Kelly was not advised that he was entitled to counsel nor warned that his answers might be used against him. He was twenty-one years old and nearly illiterate; he had previously been convicted and served a term for burglary and was not entirely unfamiliar with criminal proceedings. The Court cannot find, however, that he was aware of his rights. Kelly did not request and was not denied the right to telephone counsel or anyone else; he was visited at the Station by his wife on Sunday, September 10.

Promptly after Kelly had signed the statement, the officers went to the Oppenheim Collins store and arrested Jacobs. In the manager's office, with the manager

present, Jacobs was charged with having planned the robbery. He did not deny his part in it, but either expressly or implicitly admitted it. He went to the Station with the officers without protest; within fifteen minutes after he arrived there his questioning began, and forty minutes later, at 6.05 P.M. on Saturday, September 9, Jacobs signed a question and answer statement, prepared by one of the officers from what he had told them, admitting his complicity in the crime. No force, threats or promises were used to induce the confession, but Jacobs was not advised that he was entitled to counsel nor warned that his answers might be used against him. Jacobs is much better educated and more intelligent than Kelly, and the Court finds from the evidence that he was aware of his rights. He did not ask leave to call a lawyer. He was allowed to call his wife and was never refused permission to call anyone. His wife obtained a lawyer for him.

Hanks and Jenkins were picked up early in the morning of Sunday, September 10. At 12.15 P.M. on that day the four men were brought into the same room and all admitted participation in the crime. A brief, combined statement was prepared and initialed by all four men. No force, threats or promises were used to induce the combined statement.

On the same day, Sunday, the 10th, police questioned Kelly about a wrist watch and radio to which they had been led by the pawn tickets taken at the time of his arrest. Kelly told the police that they had been bought with the proceeds of the robbery, and also identified a revolver which Kelly admitted he had used at the time of the robbery. The revolver had been obtained as the result of a statement made by one of the other defendants. On Monday morning, September 11, Kelly identified a plastic raincoat which he had used during the robbery and had discarded before leaving the store.

On Monday, September 11, at 3.00 P.M., all four accused were taken before a Municipal Court Judge and charged with the crime. All pleaded not guilty and were held for the grand jury. The police testified that they did not take Kelly and Jacobs before a Municipal Court Judge sooner because they wished to obtain the combined statement, which was obtained on Sunday, September 10.

At the trial each of the four men was represented by his attorney, selected by him or by his family. Kelly's attorney was a man of wide experience in criminal cases, presently a county magistrate. He discussed the matter with Kelly and with counsel for the other defendants. Kelly and his attorney together determined that he should plead guilty because he was in fact guilty and had no defense. Although at the hearing in this Court Kelly testified that his confession had been obtained by threats and force, he made no such statement to his attorney before or after his appearance in the Criminal Court. The attorney stated that if Kelly had told him what Kelly testified to in this Court he would have advised him to plead not guilty, but that since Kelly admitted he had given a voluntary confession, without duress, the attorney testified that he felt then and feels now that under the law then and the law now it was wise to plead guilty and hope for mercy.

Jacobs was also represented by an attorney experienced in criminal cases, who testified that Jacobs admitted that he had voluntarily made a full disclosure to the police. Jacobs and his counsel jointly agreed upon a plea of guilty.

Both Kelly and Jacobs personally entered their pleas. Thereafter defendants' statements were read to the Judge without protest from Kelly or Jacobs or their respective counsel. Each counsel then made a statement on behalf of his client.

### Jacobs' Petition

■■ From the foregoing facts, it is clear that Jacobs has no right to relief. Although Jacobs was arrested without a warrant, Kelly's signed statement clearly implicated Jacobs and provided probable cause for the Sergeant

to believe that Jacobs had participated in the felony. That is all that is required. Mulcahy v. State, 221 Md. 413, 421, 158 A.2d 80; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 98 L.Ed. 1879; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Reeves v. Warden, D.Md., 226 F.Supp. 953, 957. It is also quite clear that Jacobs' confession was voluntarily given and not coerced in any way. Although Jacobs attempted to show facts which might make the confession involuntary under the rule in Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513, the Court does not believe his testimony. The confession was given within an hour after his arrest. The fact that he was not promptly thereafter taken before a committing magistrate does not destroy the voluntary character of his confession. It is equally clear that Jacobs voluntarily entered a plea of guilty, after consultation with competent and experienced counsel.

### Kelly's Petition

■■ Kelly's case presents a much more serious problem. The credible evidence does not show that the information which Sergeant Hornberger had before him when he directed the arrest of Kelly provided probable cause for the Sergeant to believe that Kelly had participated in the felony. There is no sufficient proof of the reliability of the informer, nor of circumstantial evidence tending to show guilt. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Bass v. United States, 8 Cir., 326 F.2d 884, 888, 889; United States v. Irby, 4 Cir., 304 F.2d 280. It is quite possible that what the Sergeant knew at the time amounted to probable cause, but that is a speculation in which this Court cannot indulge in determining the legality of the arrest.[1]

■ The Court does not believe the testimony of Kelly that his confession was obtained by force or threats. On the other hand, it was obtained as a result of his illegal arrest and detention. The fact that Kelly was being detained pursuant to an illegal arrest would not alone have destroyed the voluntary character of his confession if it had been otherwise unimpeachable and voluntary. Young v. Wainwright, 5 Cir., 326 F.2d 255. See also Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; United States v. Yeager, 3 Cir., 327 F.2d 311; Prescoe v. State, 231 Md. 486, 191 A.2d 226; Stewart v. State, 232 Md. 318, 193 A.2d 40. But in Kelly's case the totality of the circumstances, including the length of his detention before his confession, his low intelligence and the failure of the officers to advise him of his constitutional rights, as well as the fact that he was being held as the result of an illegal arrest, require a finding that his confession was not voluntary. Haynes v. Washington, supra, 373 U.S. at 516, 517, 83 S.Ct. at 1344, 1345, 10 L.Ed.2d 513; Young v. Wainwright, supra. See also Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037.

■ The final question is whether Kelly's guilty plea was voluntary. A voluntary plea of guilty is an admission of guilt and a waiver of all non-jurisdictional defects. Bloombaum v. United States, 4 Cir., 211 F.2d 944; Bennett v. Warden, 223 Md. 664, 164 A.2d 285. The State Court in the first PCPA proceeding, without taking any testimony, held that the claim of illegal arrest, illegal detention and threats by the police related to matters preliminary to trial which must be raised on a motion for a new trial or on appeal and cannot be raised in a PCPA petition, citing Whitley v. Warden, 222 Md. 608, 158 A.2d 905; Banks v. Warden, 221 Md. 592, 155 A.2d 657.

1. The Police Department should consider the desirability of requiring all officers to keep a record of such conferences as the Sergeant had with his anonymous informants so that the officers' recollection of what has been told them may be refreshed.

In the second PCPA proceeding, the State Court said:

"In view of the fact that petitioner had pleaded guilty it would seem futile to inquire into the circumstances attending his arrest. It has been repeatedly decided that a plea of guilty freely made is a conviction of the highest order. Bennett v. Warden, 223 Md. 664 [164 A.2d 285]. However, it may be argued that he might not have pleaded guilty if the police had not obtained his statement. Even if this be so, it is abundantly clear that he waived any such contention as the result of the remarks made by his own privately-employed lawyer and in his presence in an effort to obtain a lighter sentence than the one he received. Jackson v. Warden, 218 Md. 652 [146 A.2d 438] (Cert. den. 359 U.S. 917 [79 S.Ct. 598, 3 L.Ed.2d 580]); Jordan v. State, 221 Md. 134 [156 A.2d 453]."

That decision, however, was made upon a transcript of the proceedings at the arraignment and sentencing. No testimony was taken. The facts before the State Court in the PCPA proceedings, therefore, did not include the evidence upon which this Court has found that the arrest was illegal and the confession involuntary. This Court must consider the circumstances which induced Kelly to enter his guilty plea, as shown by the evidence herein, before this Court can properly hold that Kelly waived his right to rely on the illegality of his arrest and the involuntary character of his confession, by entering a guilty plea and permitting his counsel to refer to his cooperation with the police in pleading for mercy, particularly under the circumstances shown by the transcript of the sentencing. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

■ This Court does not hold that whenever a guilty plea has been preceded by some deprivation of constitutional rights the guilty plea is necessarily involuntary. Each case must be decided on its own facts.

■ Kelly's counsel testified at the hearing in this Court that Kelly had told him that he (Kelly) was guilty of the offense and that he had made a voluntary confession to the police. Such a statement does not relieve counsel of all obligation; circumstances may be such that he should consider and advise his client whether, in his opinion, the State will probably be able to prove a case. An investigation would have shown the length of the detention and would probably have developed some of the other factors which have led this Court to conclude that the confession was involuntary. On the other hand, the attorney had some reason to believe that the other evidence against Kelly would be sufficient to convict. Kelly would have been identified in Court by at least one of the victims and any other defendant who took the stand would have implicated him.

■ The question before this Court is whether Kelly's plea of guilty was voluntarily made, and whether under all the circumstances shown by the evidence in this case the plea and the subsequent remarks by his lawyer should be considered a waiver by Kelly of constitutional rights which he did not know and was not advised that he had. Under the evidence in this case, those circumstances include a confession which this Court has found to be involuntary. Moreover, the illegal arrest, the long detention and other factors made it at least doubtful whether Kelly's admissions with respect to the gun and the raincoat could properly have been admitted in evidence against him.

It is unfortunate that the State Courts did not take testimony and decide these questions in the PCPA proceedings, one of which was decided in June 1962 and the other in July 1963. The sooner evidentiary hearings are held, the greater the likelihood that the State will be able to show all facts tending to prove probable cause for an arrest and similar matters. And the Judges of the Criminal Court of Baltimore are in a better position than this Court can ever be to

judge whether the representation by counsel in a particular case meets the general standards prevailing in that Court.

Despite Kelly's manifest guilt, this Court concludes that it is required to hold that Kelly's plea was not voluntarily made, and that he did not effectively waive his constitutional rights. He must therefore be released unless the State elects to retry him within a reasonable time. If respondent enters an appeal from this decision within twenty days, this Court will grant a stay pending appeal.

Counsel will prepare a proper order.