UNITED STATES of America ex rel.
Kenneth R. BOLDEN

v.

Alfred T. RUNDLE, Superintendent.

Misc. No. 3841.

United States District Court
E. D. Pennsylvania.
April 25, 1969.

108

John H. Lewis, Jr., Philadelphia, Pa., for relator.

Vram Nedurian, Jr., Asst. Dist. Atty., of Delaware County, for respondent.

## OPINION

MASTERSON, District Judge.

On October 8, 1958, the relator, Kenneth R. Bolden, was sentenced to a term of fifteen to thirty years of imprisonment by the Court of Quarter Sessions, Delaware County, Pennsylvania. The relator had entered pleas of guilty to

charges of armed robbery, carrying a concealed deadly weapon, conspiracy to commit a burglary, burglary, and assault with intent to rob, as specified in Bills of Indictment Nos. 165–168, and 621–623 of the June Sessions, 1958. The relator did not appeal his conviction, and at the present time he still is confined at the Graterford Prison in Pennsylvania.

Approximately nine years after his conviction the relator filed a motion for a new trial nunc pro tunc in the Court of Quarter Sessions. This motion was dismissed on February 24, 1967, and, shortly thereafter, his appeals to the Superior Court of Pennsylvania and the Supreme Court of Pennsylvania, respectively, were denied. Thereafter, pursuant to Title 28 U.S.C. § 2241 et seq., the relator filed the current petition for a writ of habeas corpus. His present contentions, i. e., that his current confinement is unconstitutional because resulting from the entry of an invalid guilty plea and the deprivation of the effective assistance of counsel, were advanced throughout the state proceedings and it is conceded by the Commonwealth that as to these contentions he satisfactorily has exhausted his state remedies pursuant to Title 28 U.S.C. § 2254. See, e. g. Roberts v. LaVallee, 389 U.S. 40, 42–43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). For reasons discussed below the relator's petition for a writ of habeas corpus is denied.

I

Since the state record was incomplete this Court conducted two separate hearings for the purpose of permitting the relator to produce testimony relevant to his constitutional contentions. The following summary of the relevant factual background, including the conduct of the relator's arraignment and sentencing hearings, is based upon a review of the complete state and federal record.[1]

1. Reference is made throughout this opinion to transcripts of different hearings conducted at the pre-trial, trial, and post-trial stages of this case, and is simplified

by abbreviating the titles of these hearings in the following fashion: (a) Trial of Co-defendant on June 16, 1958,—TC; (b) Sentencing Hearing on June 16, 1958

On the evening of February 15, 1968, four men, including the relator, entered Mailman's Department Store on Third Street, in Chester, Pennsylvania. The relator and another one of the men were carrying guns. The robbers herded the store employees into a bathroom in the rear of the store and proceeded to take money from the cash register and to remove from the clothes racks various articles of clothing, including hats and boys' suits. The robbers fled the scene of the crime in a getaway car. (TC, N.T., 2–38). Later that year, on April 28th, the relator, and three other men, carrying three guns between them, entered the Penn Fruit Super-market in Chester. During the course of this robbery they were apprehended by the Chester County police who immediately arrested them, and upon searching them, uncovered a large amount of cash.

While the relator was confined at a state correctional institution awaiting trial, he was interviewed by a private attorney retained for him by his sister. (FHH, N.T., 5–6, and SHH, N.T., 2–4). During this interview he told counsel, who had worked for several years as an Assistant District Attorney in Philadelphia and who had extensive experience in criminal law, that he was guilty, that he had cooperated with the police and that he had confessed. (SHH, N.T., 4). Although the testimony of the relator and his counsel are conflicting on this point, counsel did at least inform the relator that the latter had no basis upon which he could attack his confession, that, accordingly, it would be wise to plead guilty, and that probably he would receive a sentence of not more than five years. (FHH, N.T., 5 and SHH, N.T., 6, 13). In his testimony before this Court the relator conceded that counsel never had guaranteed, or even promised, that his sentence would be five years or less (FHH, N.T., 5, 20), and at no time has the relator claimed that counsel represented to him that the prosecutor or the trial judge had promised to limit the sentence to five years in exchange for a guilty plea. (FHH, N.T., 19).

On June 4, 1958, the relator was arraigned in open court. Although he stood alone at the moment when he signed the Bills of Indictment, and thereby waived presentment of the Bills to the Grand Jury and formally entered his plea of guilty, he was represented during the rest of the hearing both by his private principal counsel and by an attorney, a member of the Delaware County Bar, whom his counsel had retained. It is conceded by the Commonwealth that neither then nor later did the Court interrogate the relator as to the voluntary nature of his plea or as to his understanding of the consequences he faced by pleading guilty. Because one of the relator's co-defendants decided to plead not guilty, the Court deferred sentencing of all the defendants allegedly involved in the robberies until June 16, 1958.

On the morning of June 16, 1958, Peyton Johnson, the co-defendant pleading not guilty, was tried on a series of indictments charging, inter alia, participation in the robbery of the Mailman's Department Store. At the suggestion of his counsel the relator had agreed to testify for the Commonwealth. (FHH, N.T., 12). During the course of his testimony at Johnson's trial the relator indicated that he had a clear understanding of the charges against him:

"Q. Now what were you going to do when you got to Chester?

A. Well, we had intentions of trying to get some money by means of armed robbery.

Q. By means of armed robbery?

A. Yes * * *

Q. Did you have a gun?

A. I did, sir * * *

—FSH; (c) Second Sentencing Hearing on October 8, 1958—SSH; (d) State Hearing on Motion for a New Trial, on February 24, 1967—MNt; (e) Federal Habeas Hearing on October 15, 1968—FFH; (f) Federal Habeas Hearing on November 25, 1968—SFH.

A. I was there at the time that the cash register were (sic) being rifled, and I took the watch off of the gentleman's arm.

Q. You are the one that took the watch?

A. That is correct, sir * * *

Q. And when you got to his home what did you all do?

A. Well, we divided up the money, and also the clothing." (TC, N.T., 21–24).

It is significant also that while the relator was cross-examined the following colloquy took place:

"Q. You pleaded guilty to this offense?

A. Yes, I did.

Q. Have you been promised any leniency if you testified on behalf of the Commonwealth against Peyton Johnson?

A. No, sir.

THE COURT: There have been no promises made in this case whatever. I am the judge, I heard the testimony in the pleas of guilty, and I say in open court there have been no promises made to anybody.

MR. GREEN: (the Delaware County Prosecutor): I can say the same on behalf of the district attorney's office.

THE COURT: Not even an intimation of a promise." (TC, N.T., 26)

On the afternoon following the trial and conviction of Mr. Johnson the Court conducted a sentencing hearing for the relator and three other co-defendants. The relator was represented both by his principal counsel and by Delaware County counsel. A large portion of this hearing was consumed by the Commonwealth's reconstruction of the Penn Fruit robbery. Relator's counsel, however, cross-examined the government witnesses at points in their testimony where the relator was incriminated most severely FSH, N.T., 44, 65), and although this cross-examination was of a limited nature it certainly was more thorough than were those conducted by counsel for the relator's co-defendants. In mitigation of the sentence counsel also presented three witnesses including the relator himself. (FSH, N.T., 78–82).

In reviewing the possible sentences which the defendants could receive, the trial court noted expressly that the relator, who had been inculpated in twelve different burglaries, could receive a sentence of 120 to 240 years. (FSH, N.T., 106). At the conclusion of the hearing the Court again deferred sentencing, this time for the purpose of waiting until pending Philadelphia charges against all the defendants had been resolved.

On October 8, 1958, the Delaware County Court conducted a second sentencing hearing. Although the relator's principal counsel was not present at this time his Delaware County counsel was present and he argued in mitigation of sentence. (SSH, N.T., 129–130, and 142–143). The Court sentenced the relator to a term of ten to twenty years of imprisonment on Bill No. 168 charging the armed robbery of the Penn Fruit Store, to run concurrently with a ten to twenty year term of imprisonment imposed by Judge Bok in Philadelphia County, and to a term of five to ten years of imprisonment on Bill No. 623 which charged the armed robbery of the Mailman Department Store. The Court suspended the imposition of sentence on Bills No. 165, 166, 167, 621 and 622.

## II

In support of his petition the relator initially urges that he was deprived of the effective assistance of counsel, in violation of the 14th Amendment of the United States Constitution, in that: (1) counsel failed to make an independent factual investigation of his guilt or innocence and thus did not have the appropriate knowledge of the case to advise him to plead guilty. See, Kelly v. Warden, Maryland Penitentiary, 230 F.Supp. 551, 556 (D.Md., 1964); and (2), the Court

refused to continue the sentencing hearing on October 8, 1958, despite the fact that Delaware County counsel informed the Court that relator's principal counsel had not arrived at the Courthouse (SSH, N.T., 129). See, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), and United States ex rel. Wagner v. Myers, 234 F.Supp. 239, 240–241 (E.D.Pa., 1964).

 To sustain his burden of proving ineffective representations by counsel the relator must show that " * * * the service of counsel was of such caliber as to amount to a farce or mockery of justice." United States ex rel. Crosby v. Rundle, 275 F.Supp. 707, 711 (E.D.Pa., 1967), rev'd on other grounds, United States ex rel. Crosby v. Brierley, 404 F.2d 790 (C.A.3, 1968). This Court will not permit a convicted criminal defendant to gain a new trial by impugning trial counsel's representation, particularly if counsel has been retained privately,[2] unless the particular course of trial and/or pre-trial strategy chosen by counsel had no reasonable basis designed to effectuate the defendant's interests:

"The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. * * * (T)he balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 604–605, 235 A.2d 349, 352 (1967).

Admittedly relator's counsel did not investigate the facts of relator's alleged crimes as thoroughly as he might have. In view of his client's intelligent and insistent affirmation of his guilt, however, it cannot be said that counsel's advice to forego the alternative of going to trial was unreasonable. Counsel had the opportunity to independently assess the weight of evidence against the relator on at least two occasions, i. e., at Mr. Johnson's trial, and at the first Sentencing Hearing. In fact, the evidence against the relator, including (a) his admissible confession, (b) eye-witness identification testimony by employees of both stores and police-officers, and (c) material evidence in the form of the fruit of the crimes which has been seized by the police, was of such incriminating nature as to indicate that it perhaps would have been unreasonable to even attempt to plead innocence.[3] Moreover, neither in 1958, nor presently, has the relator claimed that he was innocent or that there existed witnesses who would testify to an alibi defense.

 After the relator elected to enter a guilty plea counsel actively protected his rights to as great an extent as was possible, i. e., questioning government witnesses during the Sentencing Hearings and presenting character witnesses in hopes of mitigating the sentence. Although the eventual favorable result

2. The standard for granting relief to a defendant who challenges his representation by privately-retained counsel seems to be somewhat more rigorous than that which must be satisfied by a defendant challenging court-appointed counsel. See, United States ex rel. Wilkins v. Banmiller, 205 F.Supp. 123, 127–128 (E.D.Pa.1962), aff'd 3 Cir., 325 F.2d 514, and In re Ernst's Petition, 294 F.2d 556 (C.A. 3, 1961). Thus, courts have held that where privately-retained counsel's representation has been challenged the alleged ineffectiveness must be so apparent as to have placed the court on notice of the misconduct and hence rendered the conduct of counsel equivalent to " * * * the doing of the state", *Banmiller*, supra, 205 F. Supp. at 128. See also, Davis v. Bomar, 6 Cir., 344 F.2d 84, 87–89 (C.A. 6, 1965). In order to insure that the relator's claims here are resolved as fairly as possible, however, this Court has assumed arguendo that counsel was court-appointed rather than privately-retained.

3. At no time has the relator argued that the police conducted either his arrest or his search in an improper or unconstitutional manner. Nor has he contended that the police coerced his written confessions to the Penn Fruit robbery and to the Mailman's Department Store robbery, or that they extracted these statements from him in any other manner prejudicial to his constitutional rights.

of counsel's strategy cannot, in and of itself, support a conclusion that counsel performed effectively, it is noteworthy that the net punishment imposed upon the relator for his active initiatory role in these two flagrant and dangerous crimes was five to ten years imprisonment.[4] In sum, the record simply does not sustain the relator's contention that counsel ineffectively or improperly represented him.

█ It is true, of course, as relator contends secondly, that failure to provide counsel for a criminal defendant at his sentencing hearing can constitute deprivation of his right to effective assistance of counsel. See, *Mempa,* supra, 389 U.S. at 136–137, 88 S.Ct. 254, 19 L.Ed.2d 336, and United States ex rel. Wagner v. Myers, 234 F.Supp. 239 (E.D.Pa., 1964). Moreover, it is conceded by the Commonwealth that relator's principal counsel was not present at the final sentencing hearing conducted on October 8, 1958. Nevertheless, this Court cannot agree that the manner of imposing sentence upon the relator justifies granting his present petition for habeas corpus.

There were actually two "sentencing hearings" conducted in the relator's case, i. e., the first on the afternoon of June 16, 1958, and the second on October 8, 1958. See, supra, pp. 5–6. The transcripts of these hearings indicate clearly that the earlier hearing was the more significant of the two in that the Court at this time permitted counsel for all the defendants to cross-examine the Commonwealth's witnesses and to present evidence in mitigation of sentence. Counsel for the relator thoroughly availed himself of this opportunity and it cannot seriously be argued that counsel's representation of his client, at least at this earlier hearing, did not adequately protect and advance the relator's interests.

The October 8, 1958, hearing was in effect a pro forma procedure. All considerations relevant to disposition of the relator's and his co-defendants' sentences had been advanced four months earlier and the Court's only purpose in conducting this hearing was to finalize the proceedings. Moreover, relator *was* represented during this hearing—by the Delaware County counsel, who, contrary to relator's allegations, was acquainted with the case, and was, as well, an experienced practitioner before the Delaware County Bar. Indeed, this attorney twice advanced arguments in an attempt to alter the Court's announced intention as to the relator's sentence, and, to the extent that he subsequently remained silent, this Court is unable to fault him for exercising a studied judgment related to his familiarity with the personality of the sentencing judge. See generally, United States ex rel. Maryanski v. Myers, 231 F.Supp. 522, 524 (E.D.Pa., 1964).

█ Although the relator personally retained only the attorney here denominated as principal counsel, and although Delaware County counsel, as far as the record indicates, never had conferred with the relator until October 8, 1958, if then, (MNT, N.T., 15), the latter attorney in effect was an agent of relator's retained counsel. His position on October 8, 1958, was analogous to that of an attorney who has been a partner or assistant to the attorney in charge of a case and then substitutes for him or to that of a voluntary defender who has reviewed the file of a case prepared by another member of his organization. Under these circumstances this Court is unable to hold that the state trial court's failure to continue the sentencing hearing was a deprivation of relator's right to the effective assistance of counsel or that Delaware County counsel's representation of the relator in any way violated his rights protected by the Fourteenth

4. Indeed, this result seems particularly favorable for the relator in view of the fact that he was involved in a greater number of burglaries than any of his accomplices (some of whom received nearly compara-
ble sentences), and in view of the fact that testimony of co-defendants identified him as the instigator of the Delaware County crimes. (FSH, N.T., 92).

Amendment of the United States Constitution. See, *Myers,* supra, 231 F. Supp. at 523–524.

### III

Relator advances several contentions in support of his position that his guilty pleas were invalid:

(1) that they were induced by the ineffective and inadequate advice of counsel, See, *Kelly,* supra;

(2) that they improperly were entered in the absence of counsel, See, United States ex rel. McDonald v. Pennsylvania, 343 F.2d 447 (C.A. 3, 1965); and,

(3) that they improperly were entered because the trial court did not satisfy itself that they were made knowingly. See, United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 255–256 (S.D. N.Y., 1966).

 Initially, it follows from the discussion above of counsel's activities on relator's behalf, and from the conclusion that counsel acted reasonably, that relator's guilty plea cannot be invalidated solely on the basis of relator's allegation that counsel ineffectively advised a plea of guilty. Moreover, even if counsel did advise the relator that his sentence would be less than the sentence which eventually was imposed—and the evidence at the hearings here indicated that, at most, counsel only *suggested* the *possible* outcome—this additional factor would not warrant a conclusion that the relator's plea had been entered involuntarily or unknowingly, See, United States ex rel. Fink v. Rundle, 293 F.Supp. 1124, 1125 (E.D.Pa., 1968), and United States v. Johnson, 269 F.Supp. 767, 769 (S.D.N.Y., 1967).

 Secondly, while it is true that the relator is entitled to have counsel present at his arraignment, the record indicates that relator was without his counsel only at the precise moment when he signed the Bills of Indictment. See, supra, p. 3. Throughout all the other proceedings relevant to the entry of his plea he was accompanied and counselled by not one, but two, experienced trial attorneys.

 Finally, it is clear that the relator cannot prevail on his contention merely by showing that the trial court did not interrogate him fully as to his understanding of the plea and of the consequences which flowed from the entry of the plea. See, *Crosby,* supra, 404 F.2d at 795; United States ex rel. McCloud v. Rundle, 402 F.2d 853, 857 (C. A. 3, 1968); United States v. Miller, 243 F.Supp. 61 (E.D.Pa., 1965), aff'd per cur. 356 F.2d 515 (C.A. 3, 1966), cert. den. 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966), and Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196 (1968). Such a showing, as to the entry of a guilty plea in *state* criminal trials, has the impact only of shifting the burden to the Commonwealth to establish the validity of the plea. See, *Crosby,* supra, 404 F.2d at 795. Once the burden of demonstrating the validity of the plea has shifted to the Commonwealth, as it does here, then the latter must prove by an examination of the "totality of the circumstances", that the plea was intelligently, knowingly, and voluntarily entered:

> " * * * that the plea reflects the considered choice of the accused, free of any factor of inducement which has unfairly influenced or overcome his will. * * * ", *Gilligan,* supra, 256 F. Supp. at 253.

In reversing the District Court's denial of a writ of habeas corpus in *Crosby,* supra, 404 F.2d at 802, the Third Circuit Court of Appeals considered the following factors as included within the "totality of circumstances" which bear upon the voluntariness of a defendant's guilty plea: the defendant's age and background; the consistency, or lack of consistency, in the pleas made throughout the pre-trial and trial stages of the case; the extent, if any, to which the trial court conducted an inquiry into the defendant's understanding of his plea; the trial counsel's familiarity with the law; and, the defendant's opportunity to con-

sult with trial counsel. See also, United States ex rel. Grays v. Rundle, 293 F. Supp. 643, 645 (E.D.Pa., 1968).. An examination of the "totality of circumstances" in this case compels a conclusion that the Commonwealth has sustained its burden of showing that the relator voluntarily and knowingly entered his guilty pleas.

At the time of the proceedings challenged here the relator was 28 years of age, was married and had four children. (FSH, N.T., 79). He had attended school until eleventh grade, (MNT, N.T., 15), and had been employed regularly by Westinghouse Corporation until 1956 or 1957. (SSH, N.T., 129). At the hearings conducted here the relator appeared intelligent and articulate and his active participation during his co-defendant's trial and during the first Sentencing Hearing negatives any suggestion that he did not understand the charges made against him. As noted supra, p. 4, the relator lucidly and succinctly testified to his own participation in the Mailman's robbery, and government witnesses testified to the facts and nature of both robberies at the arraignment, both sentencing hearings, and the trial of the relator's co-defendant, at all of which proceedings the relator was present.

The relator never has contended that he entered his plea unknowingly or involuntarily because of mental retardation or other mental impairments on his part, and, indeed, such allegations would fly in the face of all the contradictory evidence noted above. Moreover, from the inception of formal proceedings in June, 1958, until the second Sentencing Hearing in October, 1958, the relator consistently maintained his guilty plea—never indicating that his understanding of the alleged crimes was anything other than that upon which a knowledgeable plea of guilty to the precise crimes charged could rest. Cf., United States ex rel. Metz v. Maroney, 404 F.2d 233, 236 (C.A. 3, 1968).

Although the absence from the record of any inquiry by the trial Court into the relator's understanding of his plea makes more difficult this Court's duty of assessing his voluntariness, See generally, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (Supreme Court, Opinion by Warren, C. J., delivered April 2, 1969), and West, supra, 428 Pa. at 106, as noted supra, p. 11, 237 A.2d 196, this factor alone will not sustain relator's current collateral attack upon his plea, and the trial Court did indicate at least that acceptance of the relator's guilty pleas constituted neither a promise nor guarantee of a lighter sentence. See supra, p. 5. There is no contention, or, indeed, evidence on the record, that the Court, the District Attorney, and/or the relator's counsel, tricked or coerced the relator into entering his guilty pleas.

Since there was a distinct possibility that relator's involvement in the crimes charged against him could result in his imprisonment for a period of time equivalent to the remainder of his natural life, his contention that counsel did not inform him of the maximum or minimum terms of imprisonment which could be imposed upon him constitutes the strongest argument for voiding his plea. See generally, "Guilty Plea Bargaining", 112 U. of Pa. Law Review, 865, 874–875 (1964). Counsel did testify here, however, that his usual practice was to apprise defendants of such facts, (SFH, N.T., 13), and, even if he failed to so apprise the relator, as noted supra, p. 5, the trial judge himself expressly announced to the relator the possible range of sentence. Despite the ominous portent of this declaration by the Court, and despite other Court pronouncements to similar effect made throughout the first Sentencing Hearing, the relator unwaveringly persisted in his decision to plead guilty. The relative moderation of his sentence ultimately confirmed the wisdom of his decision. The relator has advanced no arguments which convince this Court that his decision was involuntary or unknowing, and hence this Court must deny his petition for writ of habeas corpus.

The Court is deeply indebted to John H. Lewis, Jr., Esquire, of Philadelphia, Pennsylvania, who, without compensation, thoroughly and ably represented the relator.