UNITED STATES of America
ex rel. Lloyd Grover BLACK

v.

H. E. RUSSELL, Supt.

Misc. No. 69-247.

United States District Court
E. D. Pennsylvania.

Nov. 24, 1969.

George D. Bruch, Villanova, Pa., for relator.

Arlen Specter, Dist. Atty., Philadelphia, Pa., by Joseph J. Musto, Pittston, Pa., for respondent.

## OPINION AND ORDER

JOHN W. LORD, Jr., Chief Judge.

Relator, Lloyd Grover Black, who is presently incarcerated in a state penitentiary, was found guilty of murder in the second degree on June 6, 1962. (Bill of Indictment #281, February Session 1962). After the defendant entered a plea of guilty to murder generally, the District Attorney's office, by Harry Shrager, Esq., certified that the case would rise no higher than second degree murder (N.T. p. 2). In determining the degree of guilt, The Honorable David L. Ullman heard testimony without a jury. At the same time, and on the same evidence, Judge Ullman found the defendant guilty, after a plea of not guilty and a waiver of jury trial, of aggravated assault and battery with the intent to kill Sol Dortch, the brother of the homicide victim. (Bill #280, February Session 1962). Judge Ullman sentenced defendant Black to a term of 10–20 years on Bill #281 and 1½ to 3 years on Bill #280, to run consecutively with the first sentence. No direct appeal was taken from this verdict.

Relator, pursuant to 19 Penna.Stat. Ann. § 1180–1 et seq., was given a Post Conviction Hearing Act hearing on October 13, 1967 before Judge Reimel. At this hearing relator, who was represented by Philip Price, Jr., Esq., of the Defender Association of Philadelphia, raised two issues: (1) his plea of guilty was made involuntarily and unknowingly and (2) he was denied his right to a direct appeal. Judge Reimel, after a full evidentiary hearing, dismissed the relator's petition and no appeal was taken.

On February 27, 1968, at a second post-conviction hearing, relator attempted to collaterally attack his conviction by raising two further issues, to wit (1) infringement of his privilege against self-incrimination and (2) denial of his right to competent counsel. The Honorable Theodore B. Smith, Jr., who presided at this hearing, dismissed the petition with prejudice on the ground that, since no extraordinary circumstances were alleged, failure to raise these issues at the prior Post Conviction Hearing Act hearing constituted a waiver. See 19 Penna. Stat.Ann. § 1180–4(b) (1). However, Judge Smith did grant the relator the right to appeal Judge Reimel's decision nunc pro tunc and expressly told relator that he had a right to appeal his (Judge Smith's) decision. An appeal was taken to the Supreme Court of Pennsylvania which affirmed the order of Judge Smith. Commonwealth v. Black, 433 Pa. 150, 249 A.2d 561 (1969). It does not appear that relator ever appealed Judge Reimel's decision.

Since this Court finds that relator has not "deliberately sought to subvert or evade the orderly adjudication of his federal defenses in the state courts", Fay v. Noia, 372 U.S. 391, 433, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963), by his failure to raise at his first post-conviction hearing, the two issues which he attempted to raise at the second, we conclude that the relator may raise these issues in the federal courts.[1] Since no evidentiary hearing had been conducted on these two issues, this Court ordered such a hearing. For the sake of judicial

1. Since waiver affecting federal rights is a federal question, the mere fact that a state court has made a finding of waiver does not bar an independent determination of the question by the federal courts. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

economy the Court also decided to hear evidence on the two issues raised at relator's first hearing, even though it does not appear that he has appealed that decision. See United States ex rel. Montgomery v. Brierley, 414 F.2d 552 (3rd Cir. 1969).

On September 25, 1969, this Court held a full evidentiary hearing at which time evidence was taken on all four of relator's grounds of collateral attack: (1) the introduction of an involuntary confession at the trial; (2) his plea of guilty was not made knowingly and intelligently and was motivated by his confession; (3) he was deprived of effective assistance of counsel; and (4) he was denied his right to a direct appeal. Subsequent to our hearing, George D. Bruch, Esq., counsel for relator, submitted a brief and the Commonwealth submitted a reply brief on October 21, 1969.

### I. *Involuntary confession used at the trial.*

Relator first alleges that his right against self-incrimination was violated in that the statement given during the initial police interrogation, and which was subsequently introduced at the trial, was coerced from him. In the normal situation a validly given guilty plea constitutes an admission of guilt and is a waiver of all non-jurisdictional defects and defenses. United States v. Ptomey, 366 F.2d 759 (3rd Cir. 1966); United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3rd Cir. 1965). However, where a criminal defendant has pleaded guilty to murder generally, he has not waived his right to object to evidence which is being introduced on the issue of the degree of the offense since the

degree of guilt is still at issue.[2] United States ex rel. Stamm v. Rundle, 270 F. Supp. 819 (E.D.Pa.1967); aff'd per curiam, 389 F.2d 1006 (3rd Cir.); cert. denied, 393 U.S. 880, 89 S.Ct. 181, 21 L. Ed.2d 153 (1968); Commonwealth ex rel. Sanders v. Maroney, 417 Pa. 380, 207 A. 2d 789 (1965). Relator's allegation that this statement was coerced from him is based on the following assertions: that from the time he was arrested (around 11 P.M. Saturday) until the time he signed his statement (11:30 A.M. Sunday) he was not allowed to sleep nor was he given any food; he was not advised of his right to counsel or that he could remain silent;[3] he was not allowed to make a phone call; the police told him that the object of the stabbing, James Dortch, had died; the police threatened to put the children of his brother's girlfriend in jail; and the police told him that it "would mean a whole lot" if he gave a statement before anyone else did. After our evidentiary hearing, this Court is satisfied that the statement was neither given involuntarily nor coerced from the relator. However, even assuming *pro arguendo* that it were, it would not, in this case, warrant the granting of the writ. Under Pennsylvania law, the failure to object to allegedly inadmissible evidence precludes the individual from attacking its admission at a subsequent time. *See* Pellegrene v. Luther, 403 Pa. 212, 169 A.2d 298 (1961). While it is true that on federal habeas corpus "the procedural default will not alone preclude consideration of [the] claim" Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 570, 13 L.Ed.2d 408 (1965), if the failure to object is a "deliberate bypassing by counsel of the contemporaneous-

---

2. Since the District Attorney's office certified that the instant case would rise no higher than murder in the second degree, Judge Ullman could have found the defendant guilty of either voluntary manslaughter or murder in the second degree.

3. Since the interrogation took place in 1962, the rights afforded criminal suspects in Escobedo v. Illinois, 378 U.S.

478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are inapplicable. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Therefore while these facts may be relevant factors they are not dispositive of this issue as they would be if they were present in a post-Miranda interrogation.

objection rule as a part of the trial strategy," *Id.* at 451–452, 85 S.Ct. at 569, the relator is equally barred from objecting in the federal courts. Henry v. Mississippi, *supra*; Budd v. Rundle, 267 F. Supp. 49 (E.D.Pa.1967) aff'd sub nom. 398 F.2d 806 (3rd Cir. 1968); United States ex rel. Parker v. Rundle, 259 F. Supp. 420 (E.D.Pa.1966).

■ In the instant case, Edwin Naythons, Esq., counsel for relator at the trial, made no objection to the introduction of relator's statement. In fact, the only comment made by Mr. Naythons at the introduction of the statement was in response to a question posed by the Court, to wit whether or not counsel had seen the statement. Counsel responded: "Yes, sir. I have seen the statement and I have read it very carefully." (N.T. p. 70). Since the relator's plea of guilty to murder generally still left open the issue of the degree of guilt, it was in relator's best interests to offer evidence or to allow evidence to be introduced, which might serve to mitigate the degree of the offense or the sentence. Relator's statement contained several facts which, if believed, might have had this favorable effect. In the statement the relator stated that the deceased grabbed him first and that he (Dortch) had a knife in his hand, and that Dortch started coming towards him with the knife. (N.T. p. 72). These facts tend to show that relator was not the aggressor, and therefore might serve as a mitigating factor. The statement also recited that immediately prior to the knifing Dortch had "grabbed" Mamie Butler, who at one time had been relator's "common-law" wife, and that the immediate cause of the fight was relator's desire to get a gold "wedding band" which Dortch was wearing and which relator had allegedly given to Mamie Butler. These facts might tend to show that the relator was in a heat of passion when he knifed the victim and therefore would be helpful in mitigating the degree of the offense or at least the term of the sentence.

Moreover, relator's testimony at the trial and the statement which he gave to the police relate essentially the same story, which version relator maintained to be true at the hearing before this Court. Compare N.T. p. 72 (the statement) with N.T. pp. 87–90 (relator's direct testimony). By not objecting to the introduction of the statement counsel was able to put on the record evidence which otherwise would have been inadmissible; i. e., a prior consistent statement. Furthermore, counsel's deliberate failure to object was emphasized by his cross-examination and his failure to make a motion to strike the statement. This Court is satisfied that the relator was familiar with the contents of the statement and that he acquiesced in Mr. Naythons' decision not to object to its admission. The above stated factors lead us to conclude that the failure to object was a "deliberate bypassing" of the state rule as a part of the trial strategy of relator and his counsel.

II. *The guilty plea was not made knowingly, intelligently and voluntarily.*

■■ Relator's second ground of attack is that his guilty plea was not made knowingly, intelligently or voluntarily. It is clear that a guilty plea which was not made knowingly and understandingly will invalidate a conviction. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). The resolution of this issue calls for an analysis of all the relevant facts on a case by case basis. United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3rd Cir. 1968). In the *Crosby* case the Third Circuit found the following factors to be relevant: (1) the defendant's age and background; (2) the trial counsel's familiarity with the law; (3) the consistency, or lack thereof, in the pleas made throughout the pretrial and trial stages of the case; and (4) the defendant's opportunity to consult with his trial counsel. In the instant case relator was thirty-three years old at the time of the incident and had an eighth grade education which he received in the public schools of Alabama (N.T. p. 6). With

this fact in mind this Court scrutinized carefully the other relevant facts. Relator's trial counsel consistently exhibited a thorough understanding of the law. Mr. Naythons repeatedly introduced evidence which was designed to negate a possible finding by the Court that the homicide was committed in the furtherance of a felony. Furthermore, he presented evidence of provocation and passion which, if believed, would be highly relevant in determining whether the crime was second degree murder or voluntary manslaughter. See N.T. pp. 99–102.

The relator originally entered a plea of not guilty, but shortly before trial changed his plea to guilty. The Court finds that in the instant case this fact does not demonstrate that relator did not make the plea knowingly and intelligently; but rather that he was so pleading on the advice of counsel. Relator testified at our hearing and at the post-conviction hearing before Judge Reimel that he asked his counsel to withdraw his plea during the course of the trial (P.C.H. pp. 5–6–Reimel). Mr. Naythons could not recall whether the defendant showed any desire to change his plea but stated at the post-conviction hearing and at our hearing that if such were the case he certainly would have called it to the attention of Judge Ullman. Mr. Naythons testified at this Court's hearing that relator was never enthusiastic about pleading guilty but rather reluctantly agreed to so plead after counsel's advice. This was based on the fact that the prosecution had several eyewitnesses available and the very real possibility that the state would press for a conviction of first degree murder based on a felony murder theory. This Court is convinced that while the defendant might have been concerned about his plea, he did not ask counsel to change his plea during the trial. Furthermore, the change of plea from not guilty to guilty was not involuntarily made or forced upon relator.

Judge Ullman, the trial judge, specifically inquired into this issue:

The Court: Now let me clarify one thing. You came in here originally with a plea of not guilty. Yesterday, after lunch, you changed your plea to guilty. Do I understand that you are acting on the advice of counsel? Were you acting on the advice of your attorneys?

Mr. Black: Yes, sir.

The Court: Was any pressure or coercion of any kind put on you by your attorneys or anybody else to change your plea?

Mr. Black: No, no more than I couldn't get in touch with witnesses.[4] (T. pp. 83–84).

The Court also finds that, while relator alleges that he was induced to enter the guilty plea only "moments prior to his trial" (Petition p. 4/c), the plea of guilty was discussed at least twice prior to the time the change was made. Mr. Naythons visited the relator at least twice while he was confined in jail and during these visits they discussed the possibility of entering a guilty plea (P.C.H. pp. 16, 22–Reimel). The testimony of relator at his post-conviction hearing before Judge Reimel would appear to support counsel's version. When asked why he had changed his plea from not guilty he answered:

A. Because Mr. Naythons asked me —he had asked me previous time to plead guilty to second degree murder.

Q. You say previous time. Was that one of the times he came to visit you?

A. Yes. * * *

There was testimony by Mr. Naythons at the federal habeas corpus hearing that he did not recall explaining the constituent elements of the varying degrees of homicide to the relator. Counsel was certain, however, that he did discuss the consequences of pleading guilty

---

4. Relator gave counsel the name of one witness, Viola Wilson, who he claimed would "help his cause". After "every effort" (P.C.H. p. 16–Reimel) counsel was unable to locate this witness.

as well as his reasons for advising relator to so plead, to wit, the number of eyewitnesses which the state was going to call and the possibility that the District Attorney would go to Court on a felony murder theory. Counsel's failure, if there was one, to explain the legal elements of the degrees of homicide is not fatal. He did explain the consequences and the reasons he felt relator should plead guilty and, in fact, probably in the manner which relator was best able to comprehend them. For the above stated reasons the Court finds that relator entered his guilty plea with full knowledge and understanding of its consequences as well as the reasons which prompted counsel's decision to so advise him.

■ Not only must the guilty plea be made knowingly and intelligently, it must also be made voluntarily. United States ex rel. Crosby v. Brierley, *supra.* Relator alleges that his guilty plea was involuntary in that it was motivated by his coerced confession. Since we have found that the statement was made voluntarily there is no need for a lengthy discussion of this issue. It is sufficient to say that even if the Court had been convinced that the statement was coerced from him, this fact alone would not entitle the prisoner to have his petition granted. Merely to establish that a confession was coerced is not sufficient to render a guilty plea involuntary, but rather relator must show that the coerced confession motivated or played a substantial role in bringing about the guilty plea. United States ex rel. Stamm v. Rundle, *supra.* The Court finds that this confession, which was substantially similar to his testimony at the trial, did not motivate his guilty plea, but rather the plea was entered after consultation with and

on the advice of counsel for sound legal reasons. The prosecution had independent evidence in the form of at least three eyewitnesses, which relator was aware of. Moreover, at the hearing before this Court relator again stated that he could not "hope for an acquittal" since there were "9" witnesses for the Commonwealth against him. This Court is totally satisfied that the Commonwealth has met its burden[5] of showing that the guilty plea was made knowingly, intelligently, and voluntarily.

### III. *Ineffective assistance of counsel.*

■ Relator's third contention, that he was denied effective assistance of counsel, is totally without merit. To the contrary, counsel for relator showed a thorough understanding of the law generally and as it applied to the facts of the instant case. His presentation of the evidence demonstrated a clear pattern designed to negate any possibility of felony murder as well as showing that relator was provoked, and in a heat of passion at the time of the fatal stabbing. Moreover, counsel thoroughly cross-examined the prosecution's witnesses and attempted to impeach them. Clearly counsel's services did not amount to a mockery of justice. United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3rd Cir. 1969); United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3rd Cir. 1968).

### IV. *Denial of relator's right to a direct appeal.*

■ Relator's fourth and last basis for the issuance of the writ is that he was denied his right to a direct appeal as guaranteed in the instant case by 19 Penna.Stat.Ann. § 1186 and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814,

5. In the recent Supreme Court case of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Court held that an affirmative showing must be made on the record that the plea was made both knowingly and voluntarily. The fact that nothing appears on the record in the instant case to show that the plea was made knowingly is not fatal to the state's position. United States ex rel. Beecham v. Rundle, 306 F.Supp. 904

(E.D.Pa.1969). Recent cases in this Circuit indicate that the effect of the trial record not containing this showing is to shift the burden to the Commonwealth to show by an examination of the "totality of the circumstances" that the plea was knowingly and voluntarily made. United States ex rel. Bresnock v. Rundle, 300 F.Supp. 264 (E.D.Pa.1969); United States ex rel. Bolden v. Rundle, 300 F.Supp. 107 (E.D.Pa.1969).

9 L.Ed.2d 811 (1963). The gravamen of relator's allegation is that counsel abandoned him after the trial without informing him of his right to appeal. At the post-conviction hearing before Judge Reimel both Mr. Naythons (P.C.H. p. 15–Reimel) and Mr. Fuhrman (P.C.H. p. 21–Reimel), relator's court appointed counsel, testified that they did not inform relator that hë had a right to a direct appeal. It would therefore appear clear that relator was denied his rights under *Douglas*. However, pursuant to Pennsylvania law, relator was given a Post Conviction Hearing Act hearing. Therefore the issue becomes a narrow one, to wit, whether after a plea of guilty to murder generally and a conviction of second degree murder, the full evidentiary hearing under the Pennsylvania Post Conviction Hearing Act excuses the failure of trial counsel to inform the defendant that he has a right to a direct appeal and obviates the necessity of granting the defendant the right to appeal nunc pro tunc.

In Commonwealth v. Walters, 431 Pa. 74, 244 A.2d 757 (1968), the Supreme Court of Pennsylvania was faced with this same issue. In a well-reasoned opinion by Justice Roberts that court concluded that the plea of guilty to murder generally is sufficient to sustain a conviction of second degree murder and therefore the only issues which relator could have raised were (1) the validity of the plea and (2) the lawfulness of the sentence. Since the relator had the opportunity to raise these claims at his post-conviction hearing, the court found that the denial of his right to a direct appeal was not prejudicial, and therefore refused to grant the prisoner the right to appeal nunc pro tunc. *See* Commonwealth v. Stokes, 426 Pa. 265, 232 A.2d 193 (1967). In his brief, counsel for relator argues that a hearing under the Post Conviction Hearing Act is not a satisfactory substitute for a direct appeal from his conviction. Under the circumstances of this case, i. e. where it has been determined that there was a valid guilty plea, this Court finds that the re-lator was not prejudiced. There was a full evidentiary hearing before Judge Reimel where the petitioner was represented by counsel, Philip Price Jr., Esq. of the Defender Association. At this hearing relator was able, and in fact did raise, the identical issue, his right to a direct appeal. Moreover, relator was given the right to appeal nunc pro tunc from that adverse ruling, an appeal which he never took.

While the Court does not condone the failure of counsel to inform a convicted defendant of his right to direct appeal, the Court concludes that, under the circumstances of the instant case, the Commonwealth of Pennsylvania has provided a satisfactory alternative and therefore relator was not prejudiced. *See* United States ex rel. Littlejohn v. Rundle, 307 F.Supp. 92 (E.D.Pa.1969).

Counsel further argued that if this Court found that relator's *Douglas* rights had been violated we should, at this late date, void the relator's conviction rather than merely allowing him to file a direct appeal nunc pro tunc. Since we hold that the relator was not prejudiced by the alternative method to a direct appeal we need not decide this contention.

The Court wishes to express its appreciation to George D. Bruch, Esq., Vice Dean of the Villanova Law School, who thoroughly and ably represented relator in the highest traditions of the American Bar. It is to be noted that he represented relator without compensation. His brief was very complete and well written. The Court is further indebted to Alan M. Lieberman and Robert W. Mahoney, both students at the Villanova Law School, who aided Dean Bruch in the preparation of this case.

There is probable cause for appeal.

### ORDER

And now, to wit, this 24th day of November, A.D.1969, it is ordered that relator's petition for a writ of habeas corpus be and the same is hereby denied.

And it is so ordered.